ZEAGLER, administratrix, *et al. v.* ZEAGLER, administratrix, *et al.*

No. 13766. JUNE 18, 1941.

*Limerick L. Odom* and *W. G. Neville,* for plaintiffs.

*J. Henry Howard,* for defendants.

REID, Chief Justice. The origin and early history of this case may be found in the report of *Zeagler* v. *Zeagler,* 190 *Ga.* 220 (9 S. E. 2d, 263). We there held that the judge did not err in approving the auditor's report. This meant that the petitioners were entitled to have the lands of the estate partitioned, but not to the other relief sought. When, on our judgment, the case went back to the trial court, the parties, as the present record shows by various recitals and correspondence between counsel, reached an agreement to abandon the case, though no formal order was entered. But acting on this agreement they initiated in the court of ordinary a statutory proceeding for partition of the same lands (Code § 113-1018) ; and after all appropriate compliance with the preliminary steps of such a proceeding the appraisers (in whose selection all of the parties had participated) qualified and assigned separate parcels of land to the various parties respectively, and filed in the court of their appointment a return of their findings. No caveat or objection to their return having been made within the required time, an appropriate judgment was entered by the ordinary, making said return final and the judgment of the court. Nothing was ever done by the parties about this judgment in that court. This was on November 12, 1940. Sometime thereafter a proceeding was brought in the superior court by the same persons who are plaintiffs in the present case, the alignment of all the parties being just as it is now and when this case was previously before this court. In this new proceeding some of the facts above recited were set forth, and it was contended that no partition of the lands had ever been made as recommended by the auditor and, as ruled by this court, could be made. It was alleged that what had been done in the court of ordinary was invalid, and that that court's judgment was void because, as alleged, the agreement between the parties to abandon the case in the superior court and secure a partitioning on the lands by statutory method in the court of ordinary embraced a condition that the appraisers would divide the property in tracts of equal value and then allow them to be drawn *by lot,* but that instead, after the division was made, the appraisers *assigned* to the various parties their respective tracts, which it was alleged resulted in petitioners receiving tracts of less

value than those awarded to the others. Appointment of a receiver and injunction were asked. On January 23, 1941, Judge Hardeman of the Middle Circuit (designated in lieu of Judge Evans, disqualified) heard this proceeding to which defensive pleadings had been filed, and entered an order denying the relief prayed for. No exception was taken to this order, but on February 7, 1941, the plaintiffs filed with the clerk a paper stating: "Now come the plaintiffs in the above and foregoing cause, and dismiss the same without prejudice, either lawful or equitable, to either party, the same having been brought inadvertently by said plaintiffs." On February 15, 1941, the plaintiffs appeared again in the superior court and filed an amendment to the original case, containing substantially the same allegations as those set forth in the one considered by Judge Hardeman. The defendants filed a plea in bar, and a plea and answer setting up what is related above, as well as other matters, and contended that the plaintiffs were barred, not only by the adjudication in the court of ordinary, but by the judgment in the superior court rendered by Judge Hardeman, neither of which had been excepted to. Judge Graham, of the Oconee Circuit, presiding this time, denied the prayers of the amendment, which included relief sought by injunction and the appointment of a receiver. The correctness of this last ruling is tested by the present writ of error.

We have stated at some length in the outline of facts appearing above the rather ragged and multiple course of this litigation, in order to shorten what is here to be said in ruling upon the questions now made. After the judgment of this court in *Zeagler* v. *Zeagler,* supra, became final in the court below, there remained nothing to be done in reference to it except to carry out the recommendation of the auditor by appropriate proceedings to partition the lands between the parties. As in *Cates* v. *Duncan,* 181 *Ga.* 686 (183 S. E. 797), the original suit sought not only partition, but other relief equitable in nature. These other features had been eliminated by the findings of the auditor. Independently of the jurisdiction of this equitable proceeding the superior court has jurisdiction for the partitioning of lands between persons who are common owners. Code, § 85-1504 et seq. The court of ordinary likewise has jurisdiction for the division of estates in kind, and to this end, by proceedings similar to those provided for use in the

superior court, may cause lands to be partitioned. § 113-1018 et seq. The court of ordinary is a court of original, exclusive, and general jurisdiction of decedents' estates (§ 24-1901), and as such it had ample jurisdiction and power to render the judgment between the parties which, as shown above, was rendered without objection or appeal. Thus, it can not be collaterally attacked or its effect avoided except in a direct proceeding for the purpose. Code, §§ 110-701, 110-708. We assume there would be no contention to the contrary if nothing else had happened except what transpired in that court. The theory of the plaintiffs apparently is that whereas the two courts had concurrent jurisdiction of the subject-matter, the superior court in the equity case had first assumed it, and therefore, so long as it had not been formally dismissed, the other court could exercise no jurisdiction. Code, § 37-122. They do not in the present proceeding seek to have the judgment in the court of ordinary set aside as having been obtained by fraud or for some other reason, and we make no intimation as to whether under the facts disclosed they might do so. They merely ask that it be disregarded as void for want of jurisdiction.

"What is the essential test of jurisdiction of the subject-matter? 'In accordance with the general rule as to presumptions in favor of jurisdiction as against collateral attack, it is usually held that where a court has jurisdiction of cases ejusdem generis, its judgment in any case is not merely void; because its invalidity can not appear without inquiry into the facts, an inquiry which the court itself must be presumed to have made, and which will not, therefore, be permitted to be reviewed collaterally.' 15 R. C. L. 863, § 337. In 7 R. C. L. 1029, § 57, it is said: 'Jurisdiction of the subject-matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which that particular case belongs. As applied to the subject-matter of a suit, jurisdiction is always conferred by law, and it is incorrect to suppose that the power to decide in any case rests solely on the averments of a pleading, but on the contrary the jurisdiction of a court in no way depends on the sufficiency or insufficiency of the pleadings, and if the pleadings state a case belonging to a general class over which the authority of the court extends, then jurisdiction attaches and the court has power to hear and determine the issues involved.' If the particu-

lar case falls within the general class of which the court has jurisdiction, then it is necessary to look to the particular case to find grounds for ousting the jurisdiction of the court. This is what the courts generally refuse to do. Broadly, they lay down the rule that if the court has the jurisdiction to enter upon the inquiry in respect to the issues involved, then the court has jurisdiction of the subject-matter. The result is not altered by the fact that the court may arrive at an utterly erroneous conclusion. Any other rule would leave open to investigation the particular facts and the particular pleadings of every case before the issue of jurisdiction could be resolved, and such a rule would result in great confusion and largely undermine the application and effect of res adjudicata."

"The well-recognized principle that the court of ordinary in Georgia is a court of record and of general jurisdiction, and that every intendment will be indulged in favor of judgments of this court, is stated in *Bush* v. *Lindsey*, 24 *Ga.* 245 (71 Am. D. 177), and *Stuckey* v. *Watkins*, 112 *Ga.* 268 (37 S. E. 401, 81 Am. 'St. R. 47). Since of necessity every court of general jurisdiction has to determine, as the first question in a case presented to it, whether or not it has jurisdiction, this is always implied, whether it appears on the record or not. *Milner* v. *Neel*, 114 *Ga.* 118, 121 (39 S. E. 890)." *Kaiser* v. *Kaiser*, 178 *Ga.* 355, 365 (173 S. E. 688). But the plaintiffs here concede that all the parties to this case agreed to consider the superior-court case abandoned, and in effect that it was abandoned (and the record so shows), so that they might invoke the use of the machinery provided by the Code, § 113-1018 et seq., in the court of ordinary. This was done, and as between the parties this would seem to be as effectual as if the suit in the superior court had been formally dismissed, certainly so far as allowing its pendency to be a bar to the exercise of jurisdiction by the court of ordinary, even if it otherwise would be. If this be true, then even conceding the position of plaintiffs as to their contention with respect to the exercise of jurisdiction, when the statutory proceeding *began* in the court of ordinary, it had jurisdiction; and having jurisdiction of the general subject-matter and the right to exercise it in the particular case, it would hardly seem to be ousted of it by a mere breach of agreement between the parties as to how the proceeding was to be conducted. The record shows that the proceeding in the court of ordinary was regular and unobjected

to. It was participated in by all the parties or their representatives up to the point of actual assignment of the various parcels of land. If they had chosen to rely on their understanding that the different parcels should have been drawn by lot, or to contend as they now do that the division was unequal, they might well have objected to the return of the appraisers. Code, § 113-1020. The language employed by Chief Justice Russell in *Kaiser* v. *Kaiser*, supra, may be very aptly used in reference to the present case: "The court of ordinary by express statute being clothed with jurisdiction generally to divide the property of decedents in kind, and being a court of original and competent jurisdiction for that purpose, it must be conclusively presumed that the court had before it all necessary and competent evidence to authorize the judgment. In these circumstances, the courts are always extremely loath to enter upon an investigation de novo. Especially is this true in the absence of fraud; and in this case, while there are frequent allegations of fraud, no sufficient facts are alleged to show that the charge of fraud is more than the conclusion of the pleader. The court was authorized to find that the judgment of the court of ordinary was not merely an estoppel by judgment, but really res adjudicata." As may also the following language (178 *Ga.* p. 367): "The effect of the judgment of the court of ordinary is res adjudicata. . . This conclusion is obvious. This court has ruled in numerous cases that judgments of the court of ordinary can not be collaterally attacked. This is not a direct proceeding to set aside the judgment for fraud or for any of the reasons for which a judgment in one court can be attacked in another." Support for this conclusion is found in *Cates* v. *Duncan*, supra. The case is thus disposed of without reference to any question made on the effect of the judgment rendered by Judge Hardeman in the separate case filed in the superior court. One effectual judgment binding the parties is enough, without considering the other.

*Judgment affirmed. All the Justices concur.*