David BIELSKI, Kenneth Gembala, and Douglas Patterson, individually and as Town Councilmen of the Town of St. John, Lake County, Indiana, A Municipal Corporation, for and on behalf of the Taxpayers and Owners of Real Estate Within the Corporate Limits of the Town of St. John, and the Town of St. John, Lake County, Indiana, a Municipal Corporation, Petitioners,

v.

Kurt ZORN, Gordon McIntyre, and Wanda Watts, in their official capacities as Commissioners of the Indiana State Board of Tax Commissioners, Respondents.

No. 49T10–9309–TA–00070.

Tax Court of Indiana.

Jan. 20, 1994.

Richard A. Waples, Indiana Civ. Liberties Union, Indianapolis, Michael L. Muenich, Hand Muenich Wilk & Reid, Highland, Thomas M. Atherton, Dutton Overman Goldstein & Pinkus, and Peter H. Donahoe, Locke Reynolds Boyd & Weisell, Indianapolis, for petitioners.

Pamela F. Carter, Atty. Gen. of Indiana, Marilyn S. Meighen, Ted J. Holaday, Joel

Schiff, and Kathryn Symmes Hall, Deputy Attys. Gen., Indianapolis, for respondents.

FISHER, Judge.

This appeal alleges Indiana's system of real property taxation violates the provisions of Article 10, § 1 and Article 1, § 23 of the Indiana Constitution and the Fourteenth Amendment to the United States Constitution. The individual petitioners are David Bielski, Kenneth Gembala, and Douglas Patterson, each of whom owns property in the Town of St. John, St. John Township, Lake County, Indiana. These three petitioners are the members of the Town Council of St. John and bring the appeal in their official capacities, as well. The Town of St. John is also a petitioner. The Petitioners seek class certification as representatives of all other real estate owners/taxpayers in the Town of St. John.[1]

The petitioners have brought the action against the members of the Indiana State Board of Tax Commissioners in their official capacities (collectively, the State Board). The matter is before the court on the State Board's motion to dismiss under Ind. Trial Rule 12(B)(1) and 12(B)(6).

### ISSUES

The State Board's motion presents the following restated issues:

I. Whether the Landowners have invoked the jurisdiction of the court.

II. Whether the Landowners have exhausted their administrative remedies.

III. Whether the court has subject matter jurisdiction over the Landowners' claims under 42 U.S.C. § 1983.

1. The court refers to all the petitioners collectively as the "Landowners," and to the Town of St. John and Messrs. Bielski, Gembala, and Patterson in their official capacities as the "Government Petitioners."

2. The Landowners have attached the documents filed with the administrative agencies to the petition for review in this court.

3. A motion under T.R. 12(B)(6) is designed "to test the legal sufficiency of the complaint; or, stated differently, to test the law of the claim, not the facts that support it." *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 406 (citing *Mobile Enterprises, Inc. v. Conrad* (1978), 177

IV. Whether the Government Petitioners have standing to pursue the appeal.

### FACTS AND PROCEDURAL POSTURE

On April 9, 1991, the Town of St. John, a municipal corporation within St. John Township, Lake County, requested the Lake County Board of Review to review and equalize the real property assessments in Lake County and St. John and Hanover Townships within Lake County for the 1989 general reassessment. On July 10, 1991, all the present Petitioners filed a petition with the State Board reiterating the same request.[2]

### DISCUSSION AND DECISION

#### I

The State Board first claims that the Landowners' attempts to obtain review and equalization from the Lake County Board of Review and the State Board count for naught, that the court therefore lacks subject matter jurisdiction over the appeal, and that the case should be dismissed pursuant to T.R. 12(B)(1). "Jurisdiction of the subject matter involves the POWER of the court to hear and determine a general class of cases to which the proceedings belong." *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 583 N.E.2d 214, 216 (quoting *In Re Adoption of H.S.* (1985), Ind.App., 483 N.E.2d 777, 780) (emphasis in original) (footnote omitted). The State Board also asserts the Landowners have failed to state a claim upon which relief can be granted within the meaning of T.R. 12(B)(6).[3] Neither claim, however, succeeds.

Ind.App. 475, 380 N.E.2d 100, 102). It is an altogether different creature from a T.R. 12(B)(1) motion, and will be denied "unless it appears the [petitioner] is not entitled to relief under any circumstances." *Ivey v. Massachusetts Bay Ins. Co.* (1991), Ind.App., 569 N.E.2d 692, 694. *See In Re Adoption of H.S.*, 483 N.E.2d at 780 (and cases cited therein); William Harvey, 1 *Indiana Practice* 587–694 (1987) and 84–99 (1993 Supp.). *See also, e.g., Zeagler v. Zeagler* (1941), 192 Ga. 453, 15 S.E.2d 478 (succinct analysis of subject matter jurisdiction).

The State Board has not specified which of its claims come under T.R. 12(B)(1) and which under T.R. 12(B)(6). The issues, however, are

■ The right to tax is the highest attribute of sovereignty. *M'Cullough v. Maryland* (1819), 17 U.S. (4 Wheat) 316, 339, 4 L.Ed. 579, 585. The power resides exclusively with the legislature and is limited only by constitutional requirements. *See Miles v. Dep't of Treasury* (1935), 209 Ind. 172, 176–77, 199 N.E. 372, 374, *appeal dismissed* (1936), 298 U.S. 640, 56 S.Ct. 750, 80 L.Ed. 1372; *State Bd. of Tax Comm'rs v. Holliday* (1898), 150 Ind. 216, 49 N.E. 14); *Board of Comm'rs v. Harrell* (1897), 147 Ind. 500, 504, 46 N.E. 124, 125. In Indiana, the legislature's sovereign right to tax is limited by Article 10, § 1, of the Indiana Constitution, which provides in pertinent part: "The General Assembly *shall* provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal." IND. CONST., art. 10, § 1(a) (emphasis added).

> From th[is] constitutional provision[ ] ... three basic propositions stand out in bold relief: (1) Uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation. *Each of these propositions are interlocking and mandatory.* They are the constitutional basis of a valid tax law.

*Fesler v. Bosson* (1920), 189 Ind. 484, 492, 128 N.E. 145, 147 (emphasis added). *See also Indiana State Board of Tax Comm'rs v. Lyon and Greenleaf Co.* (1977), 172 Ind.App. 272, 276, 359 N.E.2d 931, 933, *trans. denied* (and cases cited therein). The quoted portion of Article 10, § 1 has remained steadfast since the adoption of the present Constitution in 1851, and the teaching of our supreme court in *Fesler* remains as instructive today as it was nearly three quarters of a century ago: the legislature is under an affirmative duty to create a system of property taxation in compliance with the constitutional command. As Justice DeBruler noted several years ago, Article 10, § 1 "mandate[s] Indiana to maintain ... rigid requirements of equality in taxing property." *Indiana*

*Aeronautics Comm'n v. Ambassadair, Inc.* (1977), 267 Ind. 137, 142, 368 N.E.2d 1340, 1343, *cert. denied sub nom. Four Winds, Inc. v. Indiana Aeronautics Comm'n* (1978), 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403.

■ To carry out its mandate, the legislature has passed numerous property tax statutes [4] and has for many decades delegated the responsibility to enforce those statutes to the State Board. *See* IND.CODE 6-1.1-30. *See also, e.g.,* Acts 1975, P.L. 47; Burns Ind.Stat. §§ 64–1302 through 64–1344 (1951 Repl.); Burns Ind.Stat. §§ 14209 through 14244 (1926); Burns Ind.Stat. § 10296 (1918 Supp.); Burns Ind.Stat. §§ 8535 through 8559 (1901); Myers Ind.Stat. §§ 8637 through 8644 (1892). Today, the legislature requires that the State Board "*shall* (1) interpret the property tax laws of this state; (2) instruct property tax officials about their taxation and assessment duties; and (3) *see that all property assessments are made in the manner provided by law*." IND.CODE 6-1.1-35-1 (emphases added). The State Board, "[l]ike all administrative agencies ... 'has such implicit power and authority as is inherent in its broad grant of power from the legislature to ... effectuate the regulatory scheme outlined by the statute.'" *Miller v. Gibson County Solid Waste Management Dist.* (1993), Ind.Tax, 622 N.E.2d 248, 259 (quoting *Northern Ind. Pub. Serv. Co. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153, 158). Nonetheless, the State Board is a creature of the legislature, and broad though its powers may be, they are no broader than those of the legislature itself. *See Board of Trustees v. State ex rel. Russell* (1966), 247 Ind. 570, 576, 219 N.E.2d 886, 890 (administrative tribunals are governed by the express and implied powers granted by the legislature); *Vehslage v. Rose Acre Farms, Inc.* (1985), Ind.App., 474 N.E.2d 1029, 1033 (administrative agencies have no common law or inherent powers; only those granted by the legislature).

■ Therefore, because the legislature is duty-bound to follow the requirements of

---

clear: Issues I, II, and III challenge the court's subject matter jurisdiction; Issue IV falls within the scope of T.R. 12(B)(6).

4. Article 10, § 1 "applies only to property taxes under a general levy." *Miles,* 209 Ind. at 177, 199 N.E. at 374.

Article 10, § 1, the State Board is bound, as well. Indeed, as the legislature's delegate, the State Board is bound not only by Article 10, § 1, but also by the legislature's express command that the State Board "shall see that all property assessments are made in the manner provided by law." IC 6–1.1–35–1. This means the State Board must adhere to IND.CODE 6–1.1–2–2, the legislature's codification of Article 10, § 1, which provides: "[a]ll tangible property which is subject to assessment *shall* be assessed on a just valuation basis and in a uniform and equal manner...." (Emphasis added). Article 10, § 1, IC 6–1.1–2–2, and IC 6–1.1–35–1 all use the word "shall." In a statutory clause, "shall" "has a mandatory rather than a directory meaning unless it appears clear from the context or purpose of the statute that the legislature intended a different meaning." *Fort Wayne Nat'l Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax., 621 N.E.2d 668, 671 (citing *United Rural Elec. Membership Corp. v. Indiana & Michigan Elec. Co.* (1990), Ind., 549 N.E.2d 1019, 1022). *See also State v. Nixon* (1974), 270 Ind. 192, 198–99, 384 N.E.2d 152, 156 (constitutions are to be construed liberally to serve their intended purpose; many rules of statutory construction apply). In the present case, then, the net effect of Article 10, § 1 and the statutes adopted under it is simple and inescapable: the State Board is under a duty to take affirmative steps to ensure "(1) Uniformity and equality in assessment; (2) uniformity and equality as to rate of taxation; and (3) a just valuation for taxation." *Fesler*, 189 Ind. at 492, 128 N.E. at 147.

This duty is not an abstract goal. It is a concrete obligation. In addition to the provisions for periodic reassessment,[5] township reassessments,[6] individual reassessments,[7] destroyed property reassessments,[8] subdivi-

sion and rezoning reassessments,[9] individual assessment appeals,[10] and tax refund petitions,[11] there are three statutes particularly relevant to the case at bar.

The first is IND.CODE 6–1.1–4–9, which states that *"[i]n order to maintain a just and equitable valuation of real property,* the state board of tax commissioners may adopt a resolution declaring its belief that it is necessary to reassess all or a portion of the real property located within this state." (Emphasis added). Although the State Board has a great deal of discretion to carry out its delegated tasks, *see Miller*, 622 N.E.2d at 259 (citing *Centrium Group v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 599 N.E.2d 242, 243), IC 6–1.1–4–9 defines the State Board's discretion to reassess in relation to its mandatory duty to give effect to Article 10, § 1.[12] The second statute is IND.CODE 6–1.1–14–4, which provides that "[t]he state board of tax commissioners *shall* review the assessments of all tangible property made by the various counties of this state." This is a mandatory duty. *Fort Wayne Nat'l*, 621 N.E.2d at 671. If, after its review, the State Board determines a county assessment appears improper, the State Board may pursue the equalization remedies created by IND.CODE 6–.1.1–14–5 through 6–1.1–14–9. The third statute, IND.CODE 6–1.1–14–10, provides the State Board "may at any time review the assessment or reassessment of any tangible property and may reassess the property." IC 6–1.1–14–10. Given all the court has already said about the mandatory nature of Article 10, § 1, the reason for the State Board's great discretion under IC 6–1.1–14–10 is apparent: the State Board must have the power to cure assessment problems to bring any and all assessments into compliance with Article 10, § 1.

5. IND.CODE 6–1.1–4–4.

6. IND.CODE 6–1.1–4–5 and 6–1.1–4–6.

7. IND.CODE 6–1.1–4–7, 6–1.1–4–8 (both repealed by P.L.1993–41 § 54, *see now* IND.CODE 6–1.1–15), and 6–1.1–4–10.

8. IND.CODE 6–1.1–4–11.

9. IND.CODE 6–1.1–4–12.

10. IND.CODE 6–1.1–15–1 through 6–1.1–15–15.

11. IND.CODE 6–1.1–26–1 through 6–1.1–26–6.

12. If, when acting under IC 6–1.1–4–9, the State Board decides reassessment of a township or larger area is needed, as is alleged in the present case, it must hold a hearing after giving the notice described in IND.CODE 6–1.1–4–10.

In the case at bar, the Landowners filed their Petition with the State Board on July 10, 1991, alleging that scores of errors in the 1989 general reassessment affected the Landowners and the class they seek to represent. The Petition also alleges those errors led to gross violations of Article 10, § 1. It even contains detailed factual statements from the Lake County Assessor, in his capacity as President of the Lake County Board of Review,[13] buttressing the Landowners' allegations.

Under IC 6–1.1–4–9 and IC 6–1.1–14–10, the State Board may exercise its authority *sua sponte.* Under IC 6–1.1–14–4, the State Board is obligated to review assessments. Within the framework of these statutes and Article 10, § 1, the Petition was sufficient to trigger the State Board's authority and duty to act. The State Board, however, took no action and allowed the Petition to languish unresolved for over two years. The question, then, becomes the effect of the State Board's failure to consider the Petition.

The State Board is constitutionally and statutorily obliged to review the assessment of property to ensure compliance with Article 10, § 1. IND. CONST., art. 10, § 1; IC 6–1.1–2–2; 6–1.1–4–9; 6–1.1–14–4; 6–1.1–14–10; 6–1.1–35–1; *Fesler,* 189 Ind. 484, 128 N.E. 145; *Lyon and Greenleaf Co.,* 172 Ind.App. 272, 359 N.E.2d 931. It cannot evade that obligation simply by refusing to act. Were it otherwise, the State Board could effectively foreclose any judicial review of its actions in discharge of the duties Article 10, § 1 imposes. That could not be. "[I]n Indiana, there is a constitutional right to review of administrative actions." *Miller,* 622 N.E.2d at 253 (quoting *State ex rel. State Bd. of Tax Comm'rs v. Marion Superior Court, Civil Division, Room No. 5* (1979), 271 Ind. 374, 378, 392 N.E.2d 1161, 1165) (alteration in original).[14]

Notwithstanding the well-settled status of the right to review, the State Board makes much of the idea that there is nothing for the court to review in this case because the State Board took no action on the Petition. This begs the question entirely. The State Board cannot refuse to review allegations of errors explicitly within its mandate and then claim its refusal is immune from judicial scrutiny *because it refused.* To borrow from standard appellate practice, it simply does not lie with the party who invites error to complain of that error later. *See Nesses v. Specialty Connectors Co.* (1990), Ind.App., 564 N.E.2d 322.

The application of both the constitutional right to review and the invited error analogy to the present case find support in IND. CODE 6–1.1–15–4(e). Under that statute, if the State Board "fails to conduct a hearing and make a final determination" in an individual appeal of a tangible property assessment,[15] the taxpayer may appeal to this court as though the State Board had issued a final determination. So it must be here, or the command of Article 10, § 1, reiterated in IC 6–1.1–2–2, and directed to the State Board in IC 6–1.1–35–1(3) would become meaningless.

This "court has exclusive jurisdiction over any case that arises under the tax laws of this state and that is an initial appeal of a final determination" of the State Board or the Indiana Department of State Revenue. IND.CODE 33–3–5–2(a). The court interprets its jurisdictional mandate broadly. *Miller,* 622 N.E.2d at 252 (citing *Harlan Sprague Dawley,* 583 N.E.2d at 218–19). This broad construction complies with the legislature's intent when it created the tax court to provide a single authoritative voice on state tax matters. *See Harlan Sprague Dawley, Inc.,* 583 N.E.2d at 219. Given the State Board's obligation to review assessments to ensure compliance with Article 10, § 1 and the court's construction of its own jurisdictional mandate, the State Board's

---

13. IND.CODE 6–1.1–28–1.

14. The "constitutional right to judicial review of an administrative decision concerning taxation ... is limited in scope," *Marion Superior Court, Civil Division, Room No. 5* at 379, 392 N.E.2d at 1166, but that scope includes decisions made in abuse of discretion. *Id.* By definition, a constitutional violation, if one is proven to have occurred, is an abuse of discretion.

15. *See Miller,* 622 N.E.2d at 251–52 (discussing the nature of actions brought under IC 6–1.1–15).

failure to review the Petition constitutes a final determination within the meaning of IC 33–3–5–2(a).[16] The court therefore has subject matter jurisdiction over the Landowners' appeal.[17]

## II

On appeal, the Landowners not only claim Article 10, § 1 was violated in the 1989 general reassessment in the town of St. John. They claim Indiana's statutory system of assessing real property based on true tax value, as opposed to fair market value,[18] violates Article 10, § 1, and the equal protection clauses of Article 1, § 23 of the Indiana Constitution, and the Fourteenth Amendment to the United States Constitution, as well.[19] The State Board responds that the Landowners have not exhausted their administrative remedies for these alleged violations and therefore argues the court cannot review the claims. The State Board is mistaken.

Although exhaustion of administrative remedies is normally a prerequisite to judicial review,

'[i]f administrative procedures are incapable of " 'answering the question present-

ed' " by a party's claim,' there is no need to present the claim at the administrative level. *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140, 144, *trans. denied* (quoting *Indiana Dep't of Public Welfare v. Chair Lance Service, Inc.* (1988), Ind., 523 N.E.2d 1373, 1379). Exhaustion of administrative remedies is not required '[w]hen the character of the question presented is beyond the pale of the agency's competency, expertise, and authority.' *Id.* (citing *Wilson v. Board of Indiana Employment Sec. Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. denied* (1979), 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101).

*Miller,* 622 N.E.2d at 254.

The State Board and its subordinate local officers and agencies have no authority whatsoever to determine the constitutionality of a statute. *See Sunshine Promotions, Inc. v. Ridlen* (1985), Ind.App., 483 N.E.2d 761, 765, *trans. denied* (citing *U.S. Auto Club, Inc. v. Woodward* (1984), Ind.App., 460 N.E.2d 1255, 1259, *trans. denied*; *Ahles v. Orr* (1983), Ind.App., 456 N.E.2d 425, 426); *State ex rel. Basham v.*

---

**16.** Notwithstanding the constitutional right to judicial review of administrative actions, if the legislature provides a statutory remedy, the appealing party's failure to follow the remedy's requirements deprives the reviewing court of subject matter jurisdiction. *See, e.g., Sherry Designs v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 589 N.E.2d 285 (discussing the obligation of taxpayers to follow the requirements of IND.CODE 6–1.1–15–5 in bringing individual assessment appeals to this court); *In Re Adoption of H.S.,* 483 N.E.2d at 780 (and cases cited therein). In the absence of a controlling statute, however, if there is either a common law or a constitutional right to review, the appropriate reviewing court has subject matter jurisdiction. *See, e.g., Miller,* 622 N.E.2d at 253 (constitutional right); *Hutchison v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 520 N.E.2d 1281, 1282 (common law third party right).

**17.** It is important to note the scope of the State Board's duty. As this court has repeatedly stated, the State Board has a great deal of discretion to carry out its duties, *see, e.g., Miller,* 622 N.E.2d at 259 (and cases cited therein), but its discretion is not so great it can ignore alleged violations of Article 10, § 1 by refusing to review those allegations.

By the same token, the Landowners' allegations that Article 10, § 1 has been violated do not

make it so. The court is required to take the allegations as true within the context of the State Board's T.R. 12(B)(6) motion, *Brenner v. Powers* (1992), Ind.App., 584 N.E.2d 569, 573, *trans. denied,* but it was not incumbent on the State Board to grant the Petition. Rather, the State Board was obliged to take *some action* in discharge of its obligation, whether it was to grant or deny the Petition in whole or in part. In any event, though, for all the reasons discussed in the text, the State Board's failure to take action is of no moment, and the Landowners' appeal is reviewable just as though the State Board had denied the Petition.

**18.** *See* IND.CODE 6–1.1–31–6(c).

**19.** The Fourteenth Amendment's "equal protection clause ... protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Allegheny Pittsburgh Coal Co. v. County Comm'n* (1989), 488 U.S. 336, 345–46, 109 S.Ct. 633, 639, 102 L.Ed.2d 688, 698 (quoting *Hillsborough v. Cromwell* (1946), 326 U.S. 620, 623, 66 S.Ct. 445, 448, 90 L.Ed. 358). The State clause provides protection co-equal with the Federal clause. *See Collins v. Day* (1992), Ind.App., 604 N.E.2d 647, 650–51 (discussing the relation between the two clauses).

*Medical Licensing Bd.* (1983), Ind.App., 451 N.E.2d 691, 696. Allegations that a statute is unconstitutional are matters solely for judicial determination. *Board of Comm'rs v. Kokomo City Plan Comm'n* (1975), 263 Ind. 282, 285–86, 330 N.E.2d 92, 95; *Fountain Park Co. v. Hensler* (1927), 199 Ind. 95, 107, 155 N.E. 465, 469. Accordingly, the adjudication of the Landowners' constitutional claims is beyond the State Board's "competency, expertise, and authority," and the Landowners cannot be penalized for their failure to seek relief from the State Board. The motion to dismiss for failure to exhaust administrative remedies is denied.

### III

■■■■ Next, the State Board claims the court lacks subject matter jurisdiction to hear the Landowners' claims under 42 U.S.C. § 1983. The court decided this question adversely to the State Board's position in *Harlan Sprague Dawley*, 583 N.E.2d 214. Acknowledging the court's decision in *Harlan Sprague Dawley*, the State Board urges the court to reverse itself in light of the North Dakota Supreme Court's decision in *State v. Quill Corp.* (1993), N.D., 500 N.W.2d 196, *cert. denied* (1993), —— U.S. ——, 114 S.Ct. 173, 121 L.Ed.2d 132 (*Quill IV*).[20] Suffice it to say, the court does not agree with the decision in *Quill IV*. In any event, *Quill IV* is of course not binding outside North Dakota's state courts.[21]

Instead, the court agrees with Justice Flaherty's opinion for the Pennsylvania Supreme Court in *Murtagh v. County of Berks*, —— Pa. ——, 634 A.2d 179, *rev'g Greenwich Township v. Murtagh* (1992), 144 Pa. Commw. 624, 601 A.2d 1352. The *Murtagh* court held state courts have subject matter jurisdiction over § 1983 tax claims. The court also discussed several other state court decisions that reached similar results, including decisions by the courts of last resort in

Mississippi, Oregon, and Tennessee. *Id.,* at 626, 601 A.2d at 1353.

■■ The court has subject matter jurisdiction over the Landowners' 42 U.S.C. § 1983 claims. The motion to dismiss is denied.

### IV

■■ Finally, the State Board contends the Government Petitioners lack standing to pursue the appeal. This is not a question of subject matter jurisdiction. *See Board of Trustees v. City of Fort Wayne* (1978), 268 Ind. 415, 421–23, 375 N.E.2d 1112, 1117. Subject matter jurisdiction refers to the power of the court to hear a general class of cases. *Harlan Sprague Dawley*, 583 N.E.2d at 216 (quoting *In re Adoption of H.S.*, 483 N.E.2d at 780).

■■■ The standing requirement, on the other hand, is a judicial creation used to determine "whether the complaining party is the proper person to invoke the court's power. It is designed to assure that litigation will be actively and vigorously contested." *Schloss v. City of Indianapolis* (1990), Ind., 553 N.E.2d 1204, 1206 (citing *Indiana Educ. Employment Relations Bd. v. Benton Community Schools* (1977), 266 Ind. 491, 496–97, 365 N.E.2d 752, 754–55). Standing serves as "a limit on the court's jurisdiction which restrains the judiciary to resolving real controversies in which the complaining party has a demonstrable injury." *Id.* (citing *City of Indianapolis v. State Bd. of Tax Comm'rs* (1974), 261 Ind. 635, 308 N.E.2d 868).

■■■ Moreover, the standing requirement in Indiana is analogous to the requirement of Ind. Trial Rule 17(A) that actions be prosecuted in the name of the real party in interest. *Brenner*, 584 N.E.2d at 573 (citing *Aikens v. Alexander* (1979), Ind.App., 397 N.E.2d 319, 323, *trans. denied*).[22] There-

---

**20.** *See State v. Quill Corp.* (1991), N.D., 470 N.W.2d 203, *rev'd* (1992), —— U.S. ——, 112 S.Ct. 1904, 119 L.Ed.2d 91, *on remand* (1992), N.D., 487 N.E.2d 598.

**21.** Generally, a denial of certiorari "carries no implication or inference...." *United States v. Kras* (1973), 409 U.S. 434, 443, 93 S.Ct. 631,

637, 34 L.Ed.2d 626, 634 (and cases cited therein) (superseded on other grounds by statute).

**22.** The Indiana rule that standing is analogous to real party in interest status originates from remarks in *Bowen v. Metropolitan Board of Zoning Appeals* (1974), 161 Ind.App. 522, 528, n. 4, 317 N.E.2d 193, 198, n. 3A, *trans. denied.* As discussed in *Bowen*, federal law, unlike Indiana law,

fore, if an action is brought by a party other than the real party in interest, the remedy is not found in T.R. 12(B)(1). Rather, the remedy is provided by T.R. 12(B)(6), which allows dismissal for "[f]ailure to state a claim upon which relief can be granted, which shall include failure to name the real party in interest under Rule 17." T.R. 12(B)(6). T.R. 17(A) provides that actions are not to be dismissed until the real party has had a chance to join, substitute, or ratify the action, and T.R. 12(B)(6) provides that even if an action is dismissed, the pleading may be amended once within ten days as a matter of right. Consequently, even if the court were to determine the Government Petitioners lacked standing, termination of the case is simply unavailable to the State Board. The Government Petitioners, though, do not lack standing, and the State Board can therefore find no relief under T.R. 12(B)(6).

The State Board claims this court's decision in *Marion County Board of Review v. State Board of Tax Commissioners* (1987), Ind.Tax, 516 N.E.2d 1129, is controlling. In that case, this court determined that the Marion County Board of Review lacked both standing and subject matter jurisdiction to appeal a final determination of the State Board granting Butler University a 100% property tax exemption on certain university-occupied parcels of land. The State Board's reliance on the decision in the present case, however, is misplaced.

As the court has already noted, however, this case is not an appeal of an individual property assessment under IC 6–1.1–15. Therefore, IC 6–1.1–15's limitations on capacity to sue, which excluded the Marion County

Board of Review in the earlier case, have no bearing in the case at bar. Moreover, not only does this appeal fall outside IC 6–1.1–15, it challenges the overall tax assessment in the Town of St. John, and by extension, St. John Township, Lake County, and the entire state. It is therefore akin to the situation in *Marion Superior Court, Civil Division, Room No. 5,* 271 Ind. 374, 392 N.E.2d 1161, in which our supreme court held the Lake County Council and Commissioners, along with Lake County itself, had standing to seek relief from the State Board's determination of "the overall *ad valorem* property tax rates in [Lake] county." *Id.* at 378, 392 N.E.2d at 1165.

A T.R. 12(B)(6) motion tests the law of a petitioner's claim. *Anderson,* 399 N.E.2d at 406. The law applicable to claims like those the Government Petitioners raise was stated in *Marion Superior Court, Civil Division, Room No. 5,* and allows the Government Petitioners to pursue their appeal.

Like the Lake County government officials in the earlier case, the Government Petitioners in the present case have a vital interest at stake. They have stated a claim upon which relief can be granted, and the State Board's motion to dismiss them is therefore denied.[23]

### CONCLUSION

For all the foregoing reasons, the State Board's motion to dismiss for want of subject matter jurisdiction and for failure to state a claim upon which relief can be granted is in all things DENIED.

draws a clear distinction between standing analysis on one hand and real party in interest analysis on the other. *See* 6A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure: Civil 2d* § 1542. Hawaii has chosen to follow the federal lead, and the decision in *Lagondino v. Maldonado* (1990), 7 Haw.App. 591, 789 P.2d 1129, *cert. denied,* (1990), 71 Haw. 668, 833 P.2d 900, is illustrative of the distinction.

In Indiana, however, where the federal constitutional "case or controversy" concerns that underlie federal standing doctrine have no state analog, *see Matter of Lawrance* (1991), Ind. 579 N.E.2d 32, 37, the need for the distinction between standing and real party in interest is less than in federal court. *See* C. Wright, A. Miller,

E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3531 (discussing federal standing). *But see City of Indianapolis v. Indiana State Bd. of Tax Comm'rs* (1974), 261 Ind. 635, 638, 308 N.E.2d 868, 870 ("absent a 'case or controversy,' we have no jurisdiction to proceed").

23. At the hearing on the motion to dismiss, the State Board also claimed the Government Petitioners should be dismissed because they would eventually use funds from Town of St. John taxpayers to pursue this appeal as a class action. That argument, however, has no place in a T.R. 12(B)(1) or T.R. 12(B)(6) motion. Instead, it falls within the scope of a hearing on class certification and class representative certification under Ind. Trial Rule 23.

THEREFORE, IT IS HEREBY OR-DERED, ADJUDGED, and DECREED, that the State Board's motion to dismiss is overruled.