**George L. VONNEGUT, Claimant,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 49T10–9505–SC–00047.

Tax Court of Indiana.

Oct. 10, 1996.

George L. Vonnegut, Indianapolis, Claimant, Pro se.

Pamela Carter, Attorney General, Joel Schiff, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

George L. Vonnegut appeals the final determination of the Indiana State Board of Tax Commissioners assessing his residential land for the March 1, 1989, assessment date.

## ISSUE

Whether the Land Order under which Vonnegut's property was assessed complies with Indiana law.

## FACTS AND PROCEDURAL HISTORY

George Vonnegut owns residential land and improvements in Marion County, Indiana. Vonnegut's property is located at 340 West 84th Street, on the corner of Spring Mill Road. This places his property on the edge of the Spring Mill Court Subdivision, a residential area east of Spring Mill Road and north of 84th Street. In accordance with IND.CODE § 6-1.1-4-13.6 (1988), the Marion County Land Valuation Commission and the State Board promulgated a Land Order for use by assessing offi-

cials in Marion County for the 1989 general reassessment and subsequent years. Under that order, the land in Spring Mill is valued in the range of $270 to $280 per front foot.[1]

Consistent with the Land Order, Vonnegut's land was assessed at $270 per front foot. Believing this value to be too high, Vonnegut filed a Petition for Review of Assessment (Form 130) with the Marion County Board of Review. The County Board denied Vonnegut's protest. Vonnegut subsequently filed a Petition for Review of Assessment (Form 131) with the State Board. After a hearing, the State Board allowed for a 10% reduction due to the excess frontage on the property. However, the State Board denied Vonnegut's protest in principal. Vonnegut now appeals to this court. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The State Board is charged with the responsibility of interpreting the property tax laws and of ensuring that property assessments are made in the manner proscribed by law. *Poracky v. State Bd. of Tax Comm'rs*, 635 N.E.2d 235, 236 (Ind. Tax Ct.1994). This Court has recognized that " 'the State Board has a great deal of discretion' " in carrying out these responsibilities. *Id.* (quoting *Auburn Foundry, Inc. v. State Bd. of Tax Comm'rs*, 628 N.E.2d 1260, 1263 (Ind. Tax Ct.1994)). Consequently, the party challenging a land valuation order issued by the State Board bears the burden of proving that the order is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds the State Board's statutory authority, or is arbitrary or capricious. *Precedent v. State Bd. of Tax Comm'rs*, 659 N.E.2d 701, 703–04 (Ind. Tax Ct.1995).

## DISCUSSION AND ANALYSIS

■ Vonnegut contends that the State Board's determination of the value of his land constitutes an error of law. More specifically, Vonnegut maintains that the Land Order is inequitable since the base rates of nearly identical properties in his neighborhood are

$100 less per front foot on the opposite (west) side of Spring Mill Road. Vonnegut submitted comparisons of his property and similar properties that are nearby in his neighborhood. Though in a different subdivision, two of these properties are located directly across the road. He also notes that there was essentially no difference in base rates between his and the comparable properties west of Spring Mill Road in 1979.

The State Board found no error in the assignment of a $270 per front foot value to Vonnegut's land. At trial, the State Board presented testimony from Linda Lessaris, the Supervisor of the Central Area, who explained that the values were correctly determined according to the plat map for the Spring Mill Court Subdivision. *Tr.* at 33. Lessaris testified that Mr. Vonnegut's property was valued consistently and fairly with other properties within the Spring Mill Court subdivision. *Tr.* at 33–34; *see also Resp't Ex. E* (Spring Mill Court plat map from Washington Township Assessor's Office). Lessaris explained that the properties which Vonnegut was using as a comparison were actually from a separate subdivision— Williams' Creek Heights. *Tr.* at 28–29. The State Board concluded that while the Williams' Creek Heights properties were in the same neighborhood, they were not in the same subdivision and therefore irrelevant to Vonnegut's appeal.

■ INDIANA CODE § 6–1.1–4–13.6 establishes specific procedures for determining land values in each county. The statute creates county land valuation commissions to determine initially the value of all classes of commercial, industrial, and residential land under guidelines promulgated by the State Board. IND.CODE § 6–1.1–4–13.6(e) (1988). The statute further requires the State Board to review the values submitted by the county commissions and empowers them to modify the assessments in order "to provide uniformity and equality." IND.CODE § 6–1.1–4–13.6(f) (1988). Moreover, as this Court explained in *Bielski v. Zorn*, the State Board's duty to ensure uniformity and equality in tax

---

1. "A front foot is a strip of land one foot wide that fronts on a desirable feature (such as a street, or body of water) and extends for the entire depth of the parcel." IND.ADMIN.CODE tit. 50, § 2.1–2–1(b) (1992).

rates and assessments is "not an abstract goal" but rather is a "concrete obligation" under both the state constitution and the directives of the General Assembly. 627 N.E.2d 880, 885 (Ind. Tax Ct.1994).

In carrying out its duty to assess similar properties similarly, the State Board may not arbitrarily limit its comparisons to properties within the same subdivision. This Court has consistently emphasized the importance of considering the value of surrounding properties in the same "neighborhood" when conducting assessments. *See Simmons v. State Bd. of Tax Comm'rs*, 642 N.E.2d 559, 561–62 (Ind. Tax Ct.1994); *Western Select Properties v. State Bd. of Tax Comm'rs*, 639 N.E.2d 1068, 1074 (Ind. Tax Ct.1994). The State Board's own regulations have a similar emphasis. The relevant provisions state:

The County Land Valuation Commission should use plat maps or recorded plats as land value maps. Urban areas usually require larger scale maps than rural areas, and commercial districts or core areas usually require larger scale maps than other urban areas. For best results, land value maps should show outlines of blocks, streets, and alleys, and should include all lots and their dimensions. This permits the insertion of unit value figures on street frontages. Each *neighborhood* can be delineated based on characteristics that *distinguish it from surrounding neighborhoods,* such as value ranges of improvements, zoning, or other restrictions on land use. *Neighborhood* boundaries may be drawn based on these kinds of characteristics, or may coincide with major roads, waterways, or other geographic features.

Land real estate agents and brokers are the best source of sales information. The Commission should ask agents and brokers to examine and report as many sales as possible, and to organize the sales into geographic or *neighborhood areas.* . . . Once sales have been posted and analyzed, values can be determined based on the appropriate unit of measurement (unit value).

IND.ADMIN.CODE tit. 50, § 2.1–2–1(a) (1992) (emphasis added). Thus, while the relevant land for the purpose of comparison may be situated in the same subdivision as the property to be assessed, in some cases it will not. Property located on the perimeter of a subdivision, for example, may abut lands both inside and outside of a subdivision. In such cases, the "neighborhood" may well include comparable properties outside of a given subdivision.

Here, the State Board failed to consider comparable properties outside of Vonnegut's subdivision in making its assessment. Testimony from the State Board's own witness showed that the plat map was the primary means used in determining the value of Vonnegut's property. *Tr.* at 33. While the values established on plat maps may prove helpful in assessing a given property, they are not in and of themselves determinative. *See State v. Maplewood Heights Corp.*, 261 Ind. 305, 308, 302 N.E.2d 782, 785 (1973) (discussing ministerial nature of recording plat maps). Subdivisions are often nothing more than a result of cartographic chance. In reality, the value of a piece of land has much more to do with its actual location and surroundings than its placement on a map. *See Poracky,* 635 N.E.2d at 237 (citing Institute of Property Taxation, *Property Taxation* 234 (Jerrold Janata ed., 2d ed. 1993)).

The State Board's failure to assess Vonnegut's land consistently with similar properties located in his neighborhood was a misapplication of the law. While the land values of a particular subdivision should inform the value of a given property, they must also be viewed within the context of the larger neighborhood. When assessing property in a neighborhood, the property being valued at the moment should be central. The surrounding properties should then inform the assessor as to the value of the given property—regardless of their subdivision.

## CONCLUSION

This Court holds that the State Board acted in an arbitrary and capricious manner when it refused to consider the value of comparable properties located within Vonnegut neighborhood. The State Board decision

constitutes an error of law. The Court therefore REMANDS the case to the State Board for further action consistent with this opinion.