Peter ZAKUTANSKY et ux., Petitioners,

v.

**STATE BOARD OF TAX COMMISSIONERS,** Respondent.

No. 64T10–9410–TA–00227.

Tax Court of Indiana.

Feb. 13, 1998.

Philip D. Norman, Costas & Norman, Valparaiso, for Petitioners.

Jeffrey A. Modisett, Attorney General, Joel Schiff, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, Judge.

Peter and Mary Jane Zakutansky (Zakutansky) appeal the final determination of the State Board of Tax Commissioners assessing their residential land as of the March 1, 1989 assessment date.

## ISSUE

Whether Zakutansky's land assessment, pursuant to a valid land order, complies with Indiana law.

## FACTS AND PROCEDURAL HISTORY

Zakutansky owns residential land and improvements in Porter County, Indiana. Zakutansky's property is located at 14 Cedar Trail, Portage, Indiana. This places his property in Ogden Dunes, a residential area located on the shore of Lake Michigan. In accordance with IND.CODE ANN. § 6–1.1–4–13.6 (West 1989), the Porter County Land Valuation Commission and the State Board promulgated a Land Order for use by assessing officials in Porter County for the 1989 general reassessment and subsequent years. Under that order, the land values in Ogden Dunes vary between $100 to $900 per front foot.

Consistent with the Land Order, Zakutansky's land was assessed at $350 per front foot. Believing this value to be too high, Zakutansky filed a Petition for Review of Assessment (Form 130) with the Porter County Board of Review (BOR). After a hearing, the BOR allowed for a 20% reduction of his total land assessment due to a negative influence factor (excess frontage). However, the BOR did not afford Zakutansky all the relief he sought. Zakutansky subsequently filed a Petition for Review of Assessment (Form 131) with the State Board. *See* IND.CODE ANN. § 6–1.1–15–3 (West 1989) (amended 1993, 1997). After a hearing, the State Board denied Zakutansky's protest. Zakutansky now appeals to this court. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The State Board is charged with the responsibility of interpreting the property tax laws and ensuring that property assessments are made in the manner prescribed by law. *See Poracky v. State Bd. of Tax Comm'rs,* 635 N.E.2d 235, 236 (Ind.Tax Ct.1994). This Court has recognized that the State Board must be given a great deal of discretion in carrying out these responsibilities. Consequently, the party challenging an assessment based on a valid land order issued by the State Board bears the burden of proving that the assessment is unsupported by substantial evidence, constitutes an abuse of discretion, exceeds the State Board's statutory authority, or is arbitrary or capricious. *Vonnegut v. State Bd. of Tax Comm'rs,* 672 N.E.2d 87, 89 (Ind.Tax Ct.1996), *review denied.*

## DISCUSSION AND ANALYSIS

### The State Board's Duty to Review Land Orders

Zakutansky contends that the State Board's determination of the value of his land violates Article X, section 1 of the Indiana Constitution. Specifically, Zakutansky maintains that the Land Order does not result in a uniform and equal assessment of his property since the base rates of nearly identical properties in his neighborhood are $200 to $250 less per front foot. Additionally, Zakutansky contends that the wrong Depth Table was used in calculating his property's base rate. Zakutansky submitted evidence of the valuation of similar properties that are nearby in Ogden Dunes. Although in a different subdivision within Ogden Dunes, these properties are located in a similar manner to Zakutansky's property (i.e., third row of houses from Lake Michigan, no view of the lake or the Chicago skyline).

The State Board found no error in the assignment of a $350 per front foot value to Zakutansky's land. At trial, the State Board presented testimony from Mr. Airhart, the State Board hearing officer, who explained that the values were correctly determined according to the Land Order for Ogden Dunes. (Tr. at 40). The State Board's position is that because the Land Order is valid, as this Court previously found in *Poracky,* 635 N.E.2d at 239, any assessment done pursuant to such an order must also be valid. Airhart testified that Zakutansky's property was valued consistently and fairly with other properties within his Ogden Dunes subdivi-

sion. (Tr. at 41–42; Joint Ex. 1 at 14 (Ogden Dunes Land Order); Resp. Ex. 1 (plat map from Portage Township Assessor's Office)). Airhart explained that the properties that Zakutansky was using as a comparison were actually from a separate subdivision within Ogden Dunes. (Tr. at 40–41). The State Board concluded that although the properties were in the same neighborhood, they were not in the same subdivision and therefore irrelevant to the determination of Zakutansky's assessment.

Section 6–1.1–4–13.6 requires the State Board to make modifications it considers necessary to ensure uniformity and equality in assessments. The State Board argues that Zakutansky's assessment is valid because the applicable Land Order is valid. It contends that section 6–1.1–4–13.6 limits Zakutansky's right to challenge the assessment of his land to alleging an improper application of the Land Order itself. By this reasoning, in the event that the State Board initially fails to make the necessary modifications to provide for uniformity and equality (and in the event the county and township assessors fail to appeal the values to the State Board) individual taxpayers have no remedy to seek review of an assessment that is not uniform and equal. To accept this proposition would force this Court to find that taxpayers only have the right to have their land assessments reviewed for compliance with the Land Order. The Court refuses to do so.

■ First, to accept the State Board's position (i.e., that its failure to act forecloses a taxpayer from asserting a constitutional right) would put the constitutional rights of taxpayers at the mercy of State Board inaction. Such a result is absurd. The purpose behind Article X, section 1 is to protect from the whim of some governmental officer a right considered fundamental.[1]

Second, the State Board's position belittles taxpayers' statutory rights to challenge their assessments. IND.CODE ANN. §§ 6–1.1–15 (West 1989 & Supp.1997); *Williams Indus. v. State Bd. of Tax Comm'rs*, 648 N.E.2d 713, 718 (Ind. Tax Ct.1995). Zakutansky has the right to seek judicial review when the under-

lying basis for the State Board's assessment does not comply with his constitutional and statutory rights to a uniform and equal assessment. Section 6–1.1–4–13.6 does not address the scope of an individual taxpayer's right to challenge the assessment of his land. Yet the State Board asks this Court to read a limitation of that right into that section. This Court will do no such thing. An intent on the part of the legislature to deprive taxpayers of the right to allege a violation of Article X, section 1 in their assessments will not be presumed from silence. The ardent wish of the State Board is no substitute for the voice of legislature.

■ Furthermore, when a taxpayer challenges a Land Order alleging that his assessment violates Article X, section 1 of the Indiana Constitution, it is no defense to answer that the assessment comports with the Land Order. A taxpayer's *constitutional* right to uniformity and equality of assessment (and the State Board's statutory duty to ensure uniformity and equality) in property tax assessments refutes the State Board's position. The State Board's position elevates an administrative order to a position of greater importance than a taxpayers constitutional right. This Court will not countenance such a preposterous result. Administrative orders yield to constitutional provisions, not the other way around. If an otherwise valid Land Order results in an individual assessment that is not uniform and equal, the Land Order as applied to the assessment yields to the constitution. See IND. CODE ANN. § 1–1–2–1 (West 1981); *Cf. Universal Group Ltd. v. Department of State Revenue*, 642 N.E.2d 553, 557 (Ind. Tax Ct 1994) (regulation invalid if it is in conflict with state's organic law).

■ The State Board's constitutional and statutory duty to review assessments requires it to review individual assessments to ensure equality and uniformity. It therefore follows that the State Board must review the Porter County Land Order to ensure that Zakutansky's real property was assessed in an equal and uniform manner. As the State

---

1. *See Town of St. John v. State Bd. of Tax Comm'rs*, 690 N.E.2d 370, 375 n. 8 (Ind. Tax Ct.1997) (noting that the framers of the Indiana

Constitution were not satisfied with "a mere statutory guarantee of uniformity and equality").

Board would have it, because section 6–1.1–4–13.6(f) empowers the State Board to modify values submitted by county valuation commissions in order "to provide uniformity and equality" any assessment made pursuant to a duly promulgated Land Order automatically results in uniformity and equality. This simply does not follow. In *Vonnegut*, this Court noted that "under both the state constitution and the directives of the General Assembly" the State Board was obligated to review assessments and that the petition triggered the State Board's authority and duty to act. 672 N.E.2d at 89–90 (citing *Bielski v. Zorn*, 627 N.E.2d 880, 885 (Ind. Tax Ct.1994)). The logic of *Vonnegut*, as well as *Bielski*, requires that the State Board, upon request by an individual taxpayer, review the assessment of property contained in a land order to ensure compliance with Article X, section 1.

In this matter, the State Board simply relied on the Porter County Land Valuation Order, stating that Zakutansky's land was priced according to the Order, which resulted in no change in the assessment. In effect, the State Board's position is that it had no obligation, upon request by an individual taxpayer, to review the Porter County Land Valuation Order to ensure that the Order provided for a uniform and equal assessment for the real estate in question. This position seeks to foreclose any judicial review of its actions and discharge the duties that Article X, section 1 imposes upon the State Board. As this Court stated in *Bielski*, there is a constitutional right to review administrative action. 627 N.E.2d at 885–86. This Court also held that the State Board cannot refuse to review allegations of errors explicitly within its mandate and then claim its refusal is immune from judicial scrutiny because it refused to take action. *Id.* Instead, the State Board has a concrete obligation to ensure uniformity and equality in the assessment of Zakutansky's real estate. *See North Park Cinemas, Inc v. State Bd. of Tax Comm'rs*, 689 N.E.2d 765, 768 (Ind. Tax Ct.1997). Zakutansky's petition triggered the State Board's duty to review the Porter County Land Order to determine if Zakutansky's real property was assessed in a equal and uniform manner; the State Board cannot simply state that the assessment complies with a Land Order and refuse to review the assessment contained therein for uniformity and equality.

■ Furthermore, the State Board's argument that it limit its comparison of Zakutansky's property to other properties in his subdivision is to no avail. This Court previously has held such a position contrary to law:

> The State Board's failure to assess Vonnegut's land consistently with similar properties located in his neighborhood was a misapplication of the law. While the land values of a particular subdivision should inform the value of a given property, they must also be viewed within the context of the larger neighborhood. When assessing property in a neighborhood, the property being valued at the moment should be central. The surrounding properties should then inform the assessor as to the value of the given property—regardless of their subdivision.

*Vonnegut*, 672 N.E.2d at 90.

### Assessing Similar Properties Similarly

■ Taxpayers bear the burden of proving that the State Board's final determination is incorrect. *Corey v. State Bd. of Tax Comm'rs*, 674 N.E.2d 1062, 1065–66 (Ind. Tax Ct.1997). To meet that burden, Zakutansky introduced into evidence at trial a list of comparable properties in the Ogden Dunes neighborhood, property record cards for each of the properties, pictures of the comparable properties, and a map of Ogden Dunes, to demonstrate that the assessment of their property was not equal and uniform with similarly situated properties. Peter Zakutansky testified that he had inspected each of the properties. Conversely, the State Board's the hearing officer testified that he did not inspect any of the comparable properties. Accordingly, the following facts are uncontroverted:

1. Zakutansky's property is assessed at a rate of $350 per front foot.

2. Zakutansky's property is located in the third row of houses from Lake Michigan.

3. Zakutansky's property does not have a view of Lake Michigan or the Chicago skyline.

4. Property owned by Duncan and Sue Hines is located at 29 Diana Road in Ogden Dunes. The Hines' property is located three rows on the third row from Lake Michigan. The Hines' property does ·not have a view of Lake Michigan and the Chicago skyline cannot be viewed from the property. The Hines' property is assessed at the value of $125 per front foot.

5. Property owned by Alan and Nancy Johnson is located at 15 Diana Road in Ogden Dunes. The property is located on the fourth row from Lake Michigan. The Johnson's property does not enjoy a view of Lake Michigan, and the Chicago skyline cannot be seen from the property. The Johnson's property is assessed at the rate of $100 per front foot.

6. Property owned by Robert and Juliann McDevitt is located at 25 Diana Road Ogden Dunes, immediately next to the Hines' property. The McDevitt's property is located on the fourth row from Lake Michigan. The property does not enjoy a view of Lake Michigan or the Chicago skyline. The McDevitt's property is assessed at the rate of $100 per front foot.

Peter Zakutansky testified that his property is similar to the properties owned by Hines, Johnson and McDevitt. The State Board neither refuted Zakutansky's testimony, nor provided a reason to discount it. The hearing officer, maintaining that property located outside of Zakutansky's subdivision was irrelevant, did not examine the properties Zakutansky submitted as comparable. Zakutansky also submitted evidence of five other properties, of which all but two were assessed at $100 or $125 per front foot. The properties that were assessed at the rate of $350 per front foot were located in the back of the Ogden Dunes, away from Lake Michigan. These properties were unique in nature, each enjoying a view of the Chicago skyline. Given the similarities of Zakutansky's property and the other properties that were submitted into evidence, a disparity may exist in assessments for comparable properties in Ogden Dunes. It is equally clear that the assessed value of Zakutansky's property is not equal and uniform when compared to the facts about comparable properties *that were introduced into evidence.* The evidence that Zakutansky submitted at trial

established that the assessment of his property of $350 per front foot was not equal and uniform when similarly situated property located less than a few hundred yards away was assessed at a value of $150 or $100 per front foot.

In meeting his burden of proof, Zakutansky placed the burden of going forward on the State Board to show that the determination was correct. *See Corey,* 674 N.E.2d at 1066. In this case, the State Board based its assessment entirely on a hearing officer's ability to read and correctly apply a Land Order. Despite the State Board's blandishments to the contrary, a proper application of a valid Land Order is not a guarantor of uniformity and equality. In the absence of evidence contradicting Zakutansky's claim, the Court finds that the State Board's assessment is arbitrary, capricious and unsupported by the evidence. Accordingly, this issue is remanded to the State Board for an assessment of Zakutansky's property based on the same rate as comparable properties located in Ogden Dunes.

### Depth Factor Determination

■ Finally, Zakutansky submits that the State Board's Final Assessment Determination, as it relates to the issue of whether the State Board applied the correct depth factor to Zakutansky's real property, is arbitrary and capricious. The State Board's hearing officer ignored the evidence that Zakutansky submitted at hearing. Instead, the hearing officer relied on the Porter County Land Order to determine the appropriate table to use in arriving at the correct depth factor. Furthermore, the hearing officer, as demonstrated at trial, could not even locate Zakutansky's property on the plat map of Ogden Dunes, (Tr. at 39 & 42–44) precluding him from determining the predominant lot depth of the area in question.

As stated in the State Board's regulations, Lot Depth Tables should be selected by determining the predominant lot depth of the area under consideration. *See* IND.AD-MIN.CODE tit. 50, r. 2.1–2–1 (1992) (repealed and recodified at *id.* r. 2.2–4–8 (1996)). Since the State Board relied solely on the Land Order and did not review any other depth factors in the neighborhood, its determina-

tion that the correct depth factor was applied is arbitrary and capricious. Conversely, Zakutansky submitted evidence that the predominant lot depth of his neighborhood was approximately 179 feet. As such, the proper depth chart would be 175 feet, which would result in the application of a 1.02 factor instead of the 1.10 factor used for the 150 foot Lot Depth Table. This issue is remanded to the State Board for a determination of the predominant lot depth of Zakutansky's neighborhood and which Lot Depth Table is applicable.

## CONCLUSION

This Court holds that the State Board acted in an arbitrary and capricious manner when it relied exclusively on the Land Order and refused to consider the value of comparable properties located within Zakutansky's neighborhood. The State Board is required to review and, when necessary, revise county land valuation orders to ensure that individual assessments are made in a manner that are uniform and equal. As stated above, the State Board has the obligation, when reviewing an assessment, to ensure uniformity and equality; the State Board's failure to consider the evidence presented during the hearing is arbitrary and capricious, and such conduct, or lack thereof, constitutes an abuse of discretion. The Court therefore REMANDS' this matter to the State Board for further action consistent with this opinion.