**AUBURN FOUNDRY, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS, Respondent.**

No. 02T10–9105–TA–00025.

Tax Court of Indiana.

Feb. 4, 1994.

---

Daniel E. Brophy and Thomas J. Dixon, Burt, Blee, Dixon & Sutton, Fort Wayne, for petitioner.

Pamela Carter, Atty. Gen., David Arthur, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Does the State Board of Tax Commissioners possess the authority to overrule a decision committed solely to the discretion of a sister agency? It does not. The court therefore reverses the State Board's final determination, which reduced the property tax deduction the Indiana Department of En-

vironmental Management (IDEM) granted the petitioner, Auburn Foundry, Inc. (Auburn), for its resource recovery system.

## FACTS AND PROCEDURAL POSTURE

In 1979, in an effort to encourage the recycling of solid waste, the legislature enacted Public Law 1979–52. Codified as IND. CODE 6–1.1–12–28.5, the law creates an incentive to recycle by offering a large property tax deduction on tangible personal property used to recycle waste into energy or some other "useful product" (the resource recovery system or RRS deduction).[1] No statute or regulation defines "useful product," however, and that failure is the motive force behind this litigation.

### Auburn's RRS Deduction Application

Auburn is a gray metal foundry in DeKalb County. It sought the benefit of the RRS deduction because it melts scrap metal to make rough castings for appliances and the automobile industry. It requested an RRS deduction for its 1989 taxes, but its application was untimely. Auburn timely requested the deduction the following year, supplying a list of property it claimed to use in its resource recovery system. Using both the 1989 and 1990 materials, IDEM granted the deduction for 1990 on April 27, 1990. When IDEM granted the deduction, it sent Auburn a cover letter and a certification form certifying Auburn's resource recovery system status. IDEM also attached the list of the tangible property Auburn submitted IDEM included in Auburn's resource recovery system. The certification states "[t]he attached listing of tangible property is a part of the resource recovery system."

*Petitioner's Exhibit 1, April 27, 1992 State Board Hearing.*

On May 15, 1990, Auburn filed a State Form 5469R/Form RRS–1 with the DeKalb County Auditor, claiming the RRS deduction certified by IDEM. The procedural record of the next several months is rather murky, but apparently the State Board became con-

---

1. The RRS deduction has led to a great deal of public controversy. *See, e.g.,* Kyle Niederpruem, *Legislation Aims to Crack Down on Tax Breaks for Recycling,* Indianapolis Star, Jan. 11, 1994, at A1, col. 5; David Remondini, *Recycling Deal Lets Companies Cut Their Tax Bills,* Indianapolis Star, Nov. 22, 1993, at A4, col. 1.

cerned Auburn was trying to get a double deduction on some of its property, one for the resource recovery system and one for manufacturing equipment within an economic revitalization area.[2] After corresponding with a State Board hearing officer on October 1, Auburn filed an amended 5469R form with the DeKalb County Auditor on October 12. The form claimed the assessed value of Auburn's real and personal property engaged in the resource recovery system was $3,523,940 and sought a deduction of 95 percent of that amount, or $3,347,750.

On January 7, 1991, the hearing officer held a hearing at which Auburn's treasurer and accounting manager gave evidence. After the hearing, the hearing officer recommended an overall assessed value of Auburn's business personal property for the March 1, 1990 assessment. The hearing officer then revised his recommendation a few days later and sent Auburn notice of his revision on January 18. He also set another hearing, but it appears this hearing was never held. Neither the original nor the revised recommendation mentioned Auburn's RRS deduction application. On April 16, 1991, the State Board issued a final determination on the assessed value of Auburn's tangible personal property for the March 1, 1990, assessment date. The determination reduced the hearing officer's revised recommendation by approximately $10,000. At the same time, the State Board issued a notice to Auburn and the DeKalb County Auditor allowing Auburn an RRS deduction of $2,153,040.

*The Appeal*

Auburn initiated this appeal on May 24, 1991. On January 17, 1992, the State Board moved the court to remand the appeal to the State Board for a final hearing before the State Board's Commissioners on Auburn's RRS deduction application. After a hearing on the motion, the court remanded the case while retaining jurisdiction and the State Board held the final hearing on April 27, 1992. At the hearing, both Auburn and the State Board introduced the testimony of a top IDEM official, Bruce Palin.

Palin testified that although the number of RRS deduction applications has increased from a very few in the early years to approximately 200 in 1991, IDEM has no personnel devoted specifically to RRS deduction applications. IDEM requires RRS deduction applicants to provide detailed descriptions of the solid or hazardous waste the applicant recovers, the process the applicant uses, and the final product the applicant recovers. For at least 1989 and 1990, IDEM also required the applicant to attach a list of the tangible property directly used in its recovery process and to certify the veracity of the listed property and the listed property's use "under penalty of law."[3] IDEM generally accepts the applicant's representations and certifies the applicant's entire list without inspection or detailed review. IDEM's review is normally limited to checking for egregious errors like the inclusion of office furniture and supplies on the list. Occasionally, IDEM does inspect an applicant's facility to verify the existence of a facility and the performance of some type of recovery activity, but the IDEM employees who make the inspections do not receive any special training about resource recovery systems. Auburn received an inspection of this type as part of its 1989 application. In any event, IDEM does not specifically determine the stage in a recovery process at which a solid waste is converted into a "useful product," nor does it certify the assessed value of property used in a resource recovery system.

On July 30, 1992, the State Board entered findings of fact, conclusions of law, and its final order. Relying on Palin's testimony, the State Board made two findings critical to this appeal. First, the State Board found IDEM did not determine the point in the recovery process at which Auburn created a useful product from the scrap metal. Second, the State Board found IDEM did not determine whether the property on Auburn's certified property list was actually part of Auburn's resource recovery system.

From these two findings, the State Board made two dispositive conclusions of law.

2. *See* IND. CODE 6–1.1–12.1–1 through 6–1.1–12.1–9.

3. *See generally* IND. CODE 13–7.

First, the State Board found Auburn creates a useful product at the point it melts the scrap metal. Second, the State Board concluded Auburn was entitled to an RRS deduction only for the equipment it uses in its recovery process up to and including the point of melting the scrap metal. Auburn, on the other hand, maintains it is entitled to an RRS deduction for the property it uses in its recovery process up to the point of casting, because it contends it does not create a useful product until it actually casts the metal.

The matter is now before the court on the parties' cross motions for summary judgment. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

The parties have filed cross motions for summary judgment, and while there are a few factual issues, none of those issues is material. *See, e.g., Kerr v. Carlos* (1991), Ind.App., 582 N.E.2d 860, 863 (a fact is material "if its existence facilitates the resolution of any of the issues involved" in the case). The appeal hinges on the delegation and exercise of authority, and the sole issue for review is whether the State Board had the authority to change the scope of IDEM's certification.

### A. The State Board of Tax Commissioners

■ The State Board is constitutionally and statutorily mandated to "interpret the property tax laws of this state ... and see that all property assessments are made in the manner provided by law." *Bielski v. Zorn* (1994), Ind.Tax, 627 N.E.2d 880, 884, 885 (citing IND. CONST., art 10, § 1; IND. CODE 6–1.1–35–1). To accomplish its mission, the State Board has a great deal of discretion. *Miller v. Gibson County Solid Waste Management Dist.* (1993), Ind.Tax, 622 N.E.2d 248, 259 (citing *Centrium Group v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 599 N.E.2d 242, 243). "Like all administrative agencies, it 'has such implicit power and authority as is inherent in its broad grant of power from the legislature ... to effectuate the regulatory scheme outlined by the statute.'" *Id.* (quoting *Northern Ind. Pub. Serv.*

*Co. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153, 158).

■ As broad as the State Board's discretion is, it ends where the State Board's authority ends. Administrative agencies have no common law or inherent powers; they have only the authority the legislature expressly or impliedly grants them. *See Bielski,* 627 N.E.2d at 884 (citing *Vehslage v. Rose Acre Farms, Inc.* (1985), Ind.App., 474 N.E.2d 1029, 1033); *Miller,* 622 N.E.2d at 259 (citing *Indiana State Bd. of Embalmers and Funeral Directors v. Kaufman* (1984), Ind.App., 463 N.E.2d 513, 521, *trans. denied*). Accordingly, they must adhere to the bounds of explicit grants and limitations of authority. *See, e.g., id.* (the State Board's organic statute requires two Commissioners for a quorum, and the State Board therefore cannot issue orders through only one of its Commissioners). Outside of areas of concurrent jurisdiction, "no administrative agency has the prerogative to make decisions properly committed to any other agency...." *Id.* at 259–60.

■ The State Board has held its mandate as the legislature's delegate in property tax matters for many decades. *See Bielski,* 627 N.E.2d at 884 (and statutes cited therein). The legislature, however, retains plenary authority to expand, contract, or otherwise alter the State Board's powers. *See Hanley v. State* (1954), 234 Ind. 326, 332–33, 123 N.E.2d 452, 454. It exercised this authority when it enacted the RRS deduction scheme.

### B. The RRS Deduction and the Indiana Department of Environmental Management

IC 6–1.1–12–28.5 creates the RRS deduction:

(a) For purposes of this section:

'Hazardous waste' has the meaning set forth in IC 13–7–1–12 and includes a waste determined to be a hazardous waste under IC 13–7–8.5–3(b).

*'Resource recovery system' means tangible property directly used to dispose of solid waste or hazardous waste by converting it into energy or other useful products.*

'Solid waste' has the meaning set forth in IC 13–7–1–22 but does not include dead animals or any animal solid or semisolid wastes.

*(b) Except as provided in subsection (c), the owner of a resource recovery system that processes solid waste or hazardous waste is entitled to have deducted annually from the assessed value of the system an amount equal to ninety-five percent (95%) of that assessed value.*

(c) The owner of a resource recovery system that is directly used to dispose of hazardous waste is not entitled to the deduction provided by this section for a particular assessment year if during that assessment year the owner:

(1) is convicted of any violation under IC 13–7–13–3 or IC 13–7–13–4; or

(2) is subject to an order or consent decree based upon a violation of a federal or state rule, regulation, or statute governing the treatment, storage, or disposal of hazardous wastes that had a major or moderate potential for harm.

IC 6–1.1–12–28.5 (emphasis added).

The legislature last amended IC 6–1.1–12–28.5 in 1986. That same year, IDEM acquired its present status and received many responsibilities. *See* IND.CODE 13–7–2–11; 13–7–3. Among other things, IDEM is responsible for approval of RRS deduction applications. IND.CODE 6–1.1–12–35.

(a) Except as provided in section 36 of this chapter[4], *a person who desires to claim the deduction provided by section 28.5, 31, 33, or 34 of this chapter must file a certified statement in duplicate, on forms prescribed by the state board of tax commissioners, and proof of certification under subsection (b)* with the auditor of the county in which the property for which the deduction is claimed is subject to assessment. Except as provided in subsection (d), with respect to property that is not assessed under IC 6–1.1–7, the person must file the statement between March 1 and May 10, inclusive, of the assessment year. The person must file the statement in each year for which he desires to obtain the deduction. With respect to a property which is assessed under IC 6–1.1–7, the person must file the statement between January 15 and March 31, inclusive, of each year for which he desires to obtain the deduction. The statement may be filed in person or by mail. If mailed, the mailing must be postmarked on or before the last day for filing. *On verification of the statement by the assessor of the township in which the property for which the deduction is claimed is subject to assessment, the county auditor shall allow the deduction.*

*(b) The department of environmental management, upon application by a property owner, shall determine whether a system or device qualifies for a deduction provided by section 28.5, 31, 33, or 34 of this chapter. If the department determines that a system or device qualifies for a deduction, it shall certify the system or device and provide proof of the certification to the property owner. The department shall prescribe the form and manner of the certification process required by this subsection.*

(c) A denial of a deduction claimed under section 28.5, 31, 33, or 34 of this chapter may be appealed as provided in IC 6–1.1–15. The appeal is limited to a review of a determination made by the township assessor, county board of review, or state board of tax commissioners.

(d) A person who timely files a personal property return under IC 6–1.1–3–7(a) for an assessment year and who desires to claim the deduction provided in section 28.5 or 31 of this chapter for property that is not assessed under IC 6–1.1–7 must file the statement described in subsection (a) between March 1 and May 15, inclusive, of that year. A person who obtains a filing extension under IC 6–1.1–3–7(b) for an assessment year must file the application between March 1 and June 14, inclusive, of that year.

*Id.* (emphasis and footnote added).

■ The court must give this language, like all statutory language, its plain meaning.

---

4. Section 36 of IC 6–1.1–12 addresses itself to deductions under sections 26, 29, 33, and 34 of IC 6–1.1–12. It has no bearing on the RRS deduction IC 6–1.1–12–28.5 creates.

*Miller,* 622 N.E.2d at 259 (citing *C & C Oil Co. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 570 N.E.2d 1376, 1380). To obtain an RRS deduction, a taxpayer must follow the course IC 6–1.1–12–35 prescribes and under subsection (b), it is IDEM, not the State Board, that: (1) establishes the form and manner of the application process; (2) receives RRS deduction applications; (3) reviews the applications; (4) determines whether an applicant's system or device qualifies for the deduction and; (5) provides certification to the owners of systems and devices that qualify. Nowhere in this statute or anywhere else is the State Board given authority to review IDEM's determination.

If IDEM grants an RRS deduction, the successful applicant must then file duplicate copies of a certified statement and proof of IDEM's certification with the appropriate county auditor. IC 6–1.1–12–35(a). The certified statement must be made on the State Board's prescribed form, Form 5469R, and verified by the appropriate township assessor. *Id.* Once the township assessor verifies the Form 5469R,[5] the county auditor has no discretion. As IC 6–1.12–35(a) states, "the county auditor shall allow the deduction." *See Fort Wayne Nat'l Corp. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 621 N.E.2d 668, 671 (citing *United Rural Elec. Membership Corp. v. Indiana & Mich. Elec. Co.* (1990), Ind., 549 N.E.2d 1019, 1022) (the word shall "has a mandatory rather than a directory meaning unless it appears clear from the context or purpose of the statute that the legislature intended a different

meaning"). With the exception of requiring the State Board to prescribe the certified statement forms, the statute gives the State Board no role in allowing the deduction.

### c. The Problem

■ This well-intentioned scheme is a model of neither legislative nor regulatory efficiency. The RRS deduction creates a 95 percent deduction from the assessed value of tangible property used as a resource recovery system. This is a potentially enormous deduction, both on an individual and a statewide basis. Yet the State Board, which "is Indiana's property tax specialist," *Miller,* 622 N.E.2d at 260, has only the slightest clerical authority in administering the RRS deduction. IDEM, on the other hand, which has no expertise in tax matters, is charged with the task of administering a large property tax deduction and has experienced great difficulty in carrying out that task, as Mr. Palin's testimony indicates.[6]

■ IC 6–1.1–12–28.5 defines a resource recovery system as "tangible property directly used to dispose of solid waste or hazardous waste by converting it into energy or other useful products." As already discussed, there is no statutory or regulatory definition of a "useful product." Indeed, in the eight years since IDEM was created and given authority over RRS deductions, it has failed to promulgate a single regulation concerning the RRS deduction, and herein lies a large portion of the problem. With no guidance from the legislature or IDEM, the State

---

**5.** IDEM did not certify the assessed value of Auburn's resource recovery system property, nor was that IDEM's task. Determining the assessed value of property is a question expressly within the State Board's expertise. *See* IND.CODE 6–1.1–30–14; 6–1.1–31–1 through 6–1.1–31–9; 6–1.1–35–1; *Bielski.*

Accordingly, IC 6–1.1–12–35(a) grants the State Board the authority to prescribe the certified statement forms. Form 5469R requires township assessors to verify the assessed value of property certified by IDEM as part of a resource recovery system. If the deduction recipient disagrees with the township assessor's valuation, IC 6–1.1–12–35(c) allows an appeal under the normal individual assessment appeal provisions of IND.CODE 6–1.1–15.

Except for the State Board's normal review authority under IC 6–1.1–15, however, the State

Board lacks all power to review an IDEM certification, and the township assessors have no greater authority than the State Board. Their authority is limited to verifying the assessed value of property IDEM certifies as part of a resource recovery system, not verifying IDEM's determination that a particular item of tangible property is actually part of a resource recovery system. IC 6–1.1–12–35(a).

**6.** Like the RRS deduction it administers, IDEM is surrounded by controversy and beset with administrative problems. *See* Kyle Niederpruem, *As New Year Arrives, State's Environmental Bill Comes Due,* Indianapolis Star, Jan. 2, 1994, at A1, col. 5; *id.* at A13, col. 1 *Environmental Chief Hits the Road to Save Agency.*

Board took it upon itself to define a "useful product." Under the plain meaning of the words used in IC 6–1.1–12–28.5, the definition the State Board applied to Auburn's process is not inherently unreasonable, but that is not the point: the statutes make no allowance for the State Board to proffer any definition, regardless of its reasonableness.[7]

### D. Auburn's Application

Notwithstanding the limits on its authority, the State Board argues it acted within the scope of its discretion. First, the State Board claims IDEM's certification of Auburn's resource recovery system was "confusing and ambiguous." *Findings of Fact, Conclusions of Law and Final Order* Finding No. 17. The testimony of IDEM official Palin that IDEM does not review property lists supports the State Board's finding, but this is of no moment.

IC 6–1.1–12–35(b) explicitly states that IDEM "shall determine whether a system or device qualifies for a [resource recovery] deduction." The undisputed facts reveal IDEM issued a certification with an attached schedule of property certified as part of Auburn's resource recovery system. It may well be that IDEM issued the certification after a less than detailed review of Auburn's application. The duty to determine whether a piece of tangible property is part of a resource recovery system nonetheless lies explicitly and exclusively with IDEM, and the State Board has no authority to remedy the problem. "[N]o administrative agency has the prerogative to make decisions properly committed to any other agency. . . ." *Miller,* 622 N.E.2d at 259–60.

The situation is not changed by Palin's testimony that the certification was not intended to certify specific categories or pieces of property. The sole stated role of a certification is to define the "system or device" that constitutes a resource recovery system. IC 6–1.1–12–35(b). IDEM cannot circumvent the express language of the statute and avoid its duty to define the property contained within an applicant's resource recovery system. Moreover, none of Palin's testimony can controvert the certification itself. The State Board makes much of the fact Auburn submitted the list of property to IDEM with its application. The State Board forgets, though, that IDEM, which had full authority and responsibility under IC 6–1.1–12–35(b) to review the list and limit it as necessary, certified all the property on the list as part of Auburn's resource recovery system. The certification form explicitly states: "[t]he attached listing of tangible property is a part of . the resource recovery system." *Petitioner's Exhibit 1, April 27, 1992 State Board Hearing.* If IDEM was in error because it made a practice of not reviewing the lists it required applicants to submit, it should change its practices.[8] As it stands, however, IDEM's certification is final.

---

**7.** The parties' briefs make clear they would like this court to define "useful product." Construction of a statute is a judicial task. *See, e.g., Joseph v. Lake Ridge Sch. Corp.* (1991), Ind.App., 580 N.E.2d 316, 319, *trans. denied.* It is also, however, the task of an administrative agency charged with administering a statute, and the agency's interpretation is subject to great deference. *Natural Resources Comm'n v. Porter County Drainage Bd.* (1991), Ind., 576 N.E.2d 587, 589 (citing *Bender v. State ex rel. Wareham* (1979), 180 Ind.App. 236, 388 N.E.2d 578).

The task of defining a "useful product" within the meaning of IC 6–1.1–12–28.5 falls to IDEM and the courts that sit in review of IDEM's actions. With rare exceptions, though, this court reviews only final determinations of the State Board and the Indiana Department of State Revenue. *See* IND.CODE 33–3–5–2(a); *Miller,* 622 N.E.2d at 255. Therefore, because resolution of Auburn's appeal does not require a definition of "useful product," the court declines to enter the fray.

**8.** Palin testified IDEM no longer attaches lists of property to its RRS deduction certifications. *Transcript of April 27, 1992 hearing* at 112. Even so, the State Board has no greater authority than it did in this case. The statutory command is plain and unambiguous: "[t]he department of environmental management . . . *shall determine whether a system or device qualifies* for a [resource recovery] deduction. If the department determines that a system or device qualifies for a deduction, it *shall certify the system or device* and provide proof of the certification to the property owner." IC 6–1.1–12–35(b) (emphasis added).

Notwithstanding Palin's testimony, this does not mean IDEM certifies the presence of a resource recovery system while the State Board certifies the property included within that system. Quite the contrary, it is IDEM's charge to perform *both* tasks.

Finally, the State Board introduced evidence from other RRS deduction proceedings in which IDEM took a position identical or analogous to the State Board's position in this case.[9] According to the State Board, this evidence is dispositive of the propriety of its position. In the abstract, that might be true: if IDEM decides, whether by regulation or case decision, that a "useful product" is created when the solid waste used in a resource recovery system melts or otherwise changes form, so be it. In this case, though, IDEM certified Auburn's resource recovery system exactly as Auburn requested, including property used past the melting point of the process, and the State Board has no authority to alter IDEM's decision.[10]

## CONCLUSION

IDEM certified that Auburn had a resource recovery system within the meaning of IC 6–1.1–12–28.5. It also certified the property Auburn used in its resource recovery system. With this done, all that remained was for the township assessor to verify Auburn's certified statement filed with IDEM's certification and the DeKalb County Auditor to allow the deduction.

The court recognizes the State Board's dilemma. IDEM's difficulties and the undefined status of "useful product" leave the State Board in an unenviable position. The remedy, though, lies not in undertaking unauthorized duties and then asking for this court's sanction. Instead, the RRS deduction, and the roles of IDEM and the State Board within the deduction scheme, are matters for the legislature.

■ Auburn's motion for summary judgment is granted. The case is remanded to the State Board for further proceedings consistent with this opinion.[11]

9. The State Board also presented evidence that Auburn was handling its hazardous waste under a consent decree. No RRS deduction for tangible property used to dispose of hazardous waste is available during an assessment year in which the owner "is subject to an order or consent decree based upon a violation of a federal or state rule, regulation, or statute governing the treatment, storage, or disposal of hazardous wastes that had a major or moderate potential for harm." IC 6–1.1–12–28.5(c). In the case at bar, however, Auburn's RRS deduction is for normal solid waste, not hazardous waste, and the consent decree is therefore of no importance.

In a related matter, Auburn submitted documents from other RRS deduction application proceedings in support of its position. The State Board moved to strike the documents and Auburn's amended brief in support of its summary judgment motion based on the documents. The State Board claimed they were untimely and outside the court's scope of review of State Board actions. After reviewing all relevant materials, the court grants the motion to strike.

10. After the hearing on remand, Auburn filed a motion for sanctions, in essence arguing the State Board violated an earlier stipulation of the parties by refusing to change its position. Stipulations do not usually require one side to give up its case. The State Board has not acted in bad faith. The motion for sanctions is denied.

11. As mentioned above, the State Board has expressed concern Auburn might be getting two deductions for some of its property. To prove its case, Auburn is allowed to claim as many deductions as it thinks it is entitled to, but it may actually take only one deduction for any piece of property, even if that property falls within the terms of two deductions. *See Monarch Steel Co. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708, 714.