The DALTON FOUNDRIES, INC., Petitioner,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9404–TA–00146.

Indiana Tax Court.

July 28, 1995.

B. Keith Shake, Michael R. Harpring, Henderson, Daily, Withrow & DeVoe, Indianapolis, for petitioner.

Pamela Carter, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

On March 8 and 22, 1994, the State Board of Tax Commissioners (the State Board) issued final determinations holding that The Dalton Foundries, Inc. (Dalton) was not entitled to a resource recovery system (RRS) deduction for the March 1, 1993, assessment. Dalton now appeals those final determinations.

## ISSUES

I. Whether Dalton, by filing Forms 133, followed a correct procedure to obtain review of the denial of its Form RRS-1.

II. Whether a county auditor must forward an untimely filed Form RRS-1 to the township assessor.

III. Whether a township assessor has discretion to deny an untimely filed Form RRS-1.

## FACTS AND PROCEDURAL HISTORY

Dalton is an Indiana corporation with principal offices in Warsaw, Indiana. On June 3, 1993, Dalton submitted an application to the Indiana Department of Environmental Management (IDEM) requesting that its resource recovery system[1] be certified to receive a RRS deduction.[2] IDEM certified Dalton's system on June 10, 1993.

After receiving the IDEM certification, Dalton sought to receive the RRS deduction for the March 1, 1993, assessment. Accordingly, Dalton filed a Claim for Deduction of Assessed Valuation Applicable to Resource Recovery Systems (Form RRS-1) with the Kosciusko County Auditor (Auditor)[3] on June 18, 1993. By June 18, 1993, however, the statutory deadline for filing the Form RRS-1 for the March 1, 1993, assessment had already expired.[4]

On June 22, 1993, the Auditor denied Dalton's Form RRS-1 on the ground that Dalton had missed the filing deadline. The Auditor informed Dalton that it could appeal her decision by filing a Petition to the County Board of Review for Review of Assessment (Form 130). Dalton, however, did not appeal.

On October 22, 1993, Dalton filed a second Form RRS-1 for the March 1, 1993, assessment. On November 14, 1993, the Auditor, again, denied Dalton's Form RRS-1 on the ground that Dalton had missed the filing deadline.

On December 1, 1993, Dalton filed two Petitions for the Correction of Error (Forms 133)—one for the real property in its resource recovery system and one for the personal property in its resource recovery system. In its Forms 133 Dalton made two claims. First, Dalton claimed that through an "error of omission" the proper official failed to act on its Form RRS-1. Specifically, Dalton claimed that only the township

---

1. IND.CODE 6-1.1-12-28.5 defines the term "resource recovery system" as "tangible property directly used to dispose of solid waste or hazardous waste by converting it into energy or other useful products."

2. I.C. 6-1.1-12-28.5(b) provides that "the owner of a resource recovery system that processes solid waste or hazardous waste is entitled to have deducted annually from the assessed value of the system an amount equal to ninety-five percent (95%) of that assessed value."

3. See IND.CODE 6-1.1-12-35; 50 I.A.C. 4.2-11-4.

4. I.C. 6-1.1-12-35(a) provides that a Form RRS-1 covering real property must be filed between March 1 and May 10 of the assessment year. I.C. 6-1.1-12-35(d) provides that a Form RRS-1 covering personal property must be filed between March 1 and May 15 of the assessment year.

assessor, not the Auditor, was authorized to act on its Form RRS–1. Second, Dalton claimed that its Form RRS–1 could not be denied merely because it was untimely.

The County Board of Review denied Dalton's Forms 133 and forwarded them to the State Board.[5] On March 8 and 22, 1994, the State Board denied Dalton's Forms 133, finding that Dalton failed to follow the Form 130 procedure to obtain review of the denial of its Form RRS–1. In addition, the State Board determined that there was no "error of omission" on the part of any state or county official.

On April 22, 1994, Dalton filed this original tax appeal, and on December 13, 1994, Dalton filed a motion for summary judgment. The case is now before the court on Dalton's motion for summary judgment.

## STANDARD OF REVIEW

A summary judgment motion may be granted only when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *Knauf Fiber Glass, GmbH v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 629 N.E.2d 959, 960. *See also* Ind.Trial Rule 56(C).

## DISCUSSION AND ANALYSIS

### I

The first issue the court must resolve is whether Dalton, by filing Forms 133, followed a correct procedure to obtain review of the denial of its Form RRS–1. The State Board offers three arguments to support its position that Dalton did not.

■ First, the State Board contends that Dalton was required to appeal the denial of its Form RRS–1 via the Form 130 procedure. Specifically, the State Board explains that once the Auditor rendered her decision, Dalton had 30 days in which to file a Form 130. *See* IND.CODE 6–1.1–15–1; 50 I.A.C. 4.2–3–3.[6] Dalton, however, did not file a Form 130 within the 30 day limitation period. There-

fore, the State Board, relying on *Reams v. State Board of Tax Commissioners* (1993), Ind.Tax, 620 N.E.2d 758, 759, insists that Dalton lost the right to obtain review of the denial of its Form RRS–1. Moreover, the State Board argues that Dalton cannot use its Forms 133 to revive the Form 130 appeal that it allowed to lapse. The State Board maintains that if taxpayers, like Dalton, are allowed to use the Form 133 to circumvent the requirements of the Form 130 procedure, the Form 130 procedure will be rendered meaningless. Thus, the State Board implies that a taxpayer who files a Form 133 after the limitation period for filing a Form 130 has expired abuses the Form 133 procedure. The court rejects the State Board's argument.

I.C. 6–1.1–12–35(c) authorizes an appeal from the denial of a RRS deduction. Its language is plain and unambiguous. It states that the denial of a RRS deduction "may be appealed as provided in I.C. 6–1.1–15." I.C. 6–1.1–12–35(c). The appeal, however, "is limited to a review of a determination made by the *township assessor, county board of review,* or *state board of tax commissioners.*" *Id.* (emphasis added).

The Form 130 appeal procedure is found within I.C. 6–1.1–15–1. I.C. 6–1.1–15–1; 50 I.A.C. 4.2–3–3. Consequently, if the township assessor, county board of review, or State Board had denied Dalton's Form RRS–1, Dalton could have filed a Form 130. I.C. 6–1.1–12–35(c). It was the *county auditor,* however, who denied Dalton's Form RRS–1, and I.C. 6–1.1–12–35(c) does not provide for an appeal from a determination made by a county auditor.

While I.C. 6–1.1–12–35(c) does not authorize an appeal from the denial of an RRS deduction by a county auditor, the State Board determined that Dalton had a right to and, in fact, was obligated to pursue Form 130 review under that statute. The State Board's determination was, therefore, contrary to law, for it had no authority to provide and require such an appeal in contraven-

---

5. *See* IND.CODE 6–1.1–15–12(d).

6. I.C. 6–1.1–15–1 was amended by P.L. 41–1993, SEC. 11 (effective January 1, 1994). Taxpayers

now have 45 days after notice of an assessing official's action in which to file a Form 130.

tion of I.C. 6–1.1–12–35(c). Indeed, the State Board "cannot ... create a rule out of harmony with [a] statute." *Hutchison v. State Bd. of Tax Comm'rs* (1988), Ind.Tax, 520 N.E.2d 1281, 1283.

■ Even if I.C. 6–1.1–12–35(c) did authorize an appeal from final determination of a county auditor, a taxpayer, like Dalton, would not necessarily abuse the Form 133 procedure by filing a Form 133 instead of a Form 130. The Form 130 and the Form 133 overlap to the extent that both may be used to challenge objective errors in an assessment. *Reams*, 620 N.E.2d at 759. While a limitation period is imposed upon the filing of the Form 130, there is no statutory limitation period imposed upon the filing of a Form 133. Thus, a taxpayer who wishes to challenge an objective error in his or her assessment may file a Form 130 within the applicable limitation period. After the limitation period for filing a Form 130 has expired, however, the taxpayer is not precluded from filing a Form 133. Indeed, if a taxpayer's claims fit within the parameters of the Form 133, the taxpayer may file a Form 133. In other words, a taxpayer who wishes to challenge an objective error but fails to file a Form 130 within the applicable limitation period does not lose the *right to review*, as the State Board contends. The taxpayer only loses the right to *Form 130/131 review*. *Id.*

Next, the State Board contends that 50 I.A.C. 4.2–3–12(g)(3) precluded Dalton from filing its Forms 133. The court disagrees.

The Form 133 may be used to correct an "error of omission" by any state or county officer that results in a taxpayer not being given credit for an exemption or deduction permitted by law. I.C. 6–1.1–15–12(a)(8); 50 I.A.C. 4.2–3–12. 50 I.A.C. 4.2–3–12(g)(3) provides guidance on what constitutes an "error of omission." It instructs that not "every error that a taxpayer might claim was made in the determination of eligibility for a deduction" is an "error of omission." 50 I.A.C. 4.2–3–12(g)(3). "Consequently, if an exemption or deduction application was acted upon by the appropriate official or officials and was wholly or partially denied, the Form No. 133 (50 IAC 4.2–2–9) does not apply." *Id.*

Relying on 50 I.A.C. 4.2–3–12(g)(3), the State Board asserts that because there was action on Dalton's Form RRS–1, Dalton could not file a Form 133. 50 I.A.C. 4.2–3–12(g)(3) does not, however, preclude the filing of a Form 133 whenever there has been action on a deduction application. It precludes the filing of a Form 133 when there has been action on a deduction application by the *appropriate official*. Consequently, nothing in 50 I.A.C. 4.2–3–12(g)(3) precludes the filing of a Form 133 to raise the claim that there has been action on a deduction application by the *wrong official*. Indeed, the claim that there has been action on a deduction application by the wrong official is no different than the claim that the appropriate official has failed to act on a deduction application.

■ Finally, the State Board contends that Dalton's Forms 133 are improper because they ask the State Board to make a determination that requires resort to subjective judgment. *See Hatcher v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 561 N.E.2d 852, 857 (the Form 133 may be used only for errors that may be corrected without resort to subjective judgment.) Specifically, the State Board explains that determining whether to grant a RRS deduction after the untimely filing of a Form RRS–1 requires consideration of subjective factors.

The court need not decide whether the decision to grant a RRS deduction after the untimely filing of a Form RRS–1 requires consideration of subjective factors because that question is not before the court. The question before the court is whether the appropriate official acted on Dalton's Form RRS–1, and resolution of that question not require resort to subjective judgment. Indeed, determining whether the appropriate official acted on Dalton's Form RRS–1 requires consideration of objective factors only.

## II

■ Having determined that Dalton, by filing Forms 133, followed a correct procedure to obtain review of the denial its Form RRS–1, the court must now decide whether

there is merit to the claims raised in Dalton's Forms 133.

I.C. 6–1.1–12–35(a) provides:

a person who desires to claim the [RRS deduction with respect to real property] ... must file a certified statement in duplicate, on forms prescribed by the state board of tax commissioners [the Form RRS–1], and proof of [IDEM] certification ... with the auditor of the county in which the property for which the deduction is claimed is subject to assessment.... [T]he person must file the statement between March 1 and May 10,[7] inclusive, of the assessment year.... On verification of the statement by the assessor of the township in which the property for which the deduction is claimed is subject to assessment, the county auditor shall allow the deduction.

The language of I.C. 6–1.1–12–35(a) is clear: when a county auditor receives a *timely* Form RRS–1, she must forward it to the township assessor for his "verification." It is also clear that when a township assessor makes a determination with respect to a timely filed Form RRS–1, the county auditor has no authority to change or modify the township assessor's determination. *Id.; Auburn Foundry, Inc. v. State Bd. of Tax Comm'rs* (1994), Ind.Tax, 628 N.E.2d 1260, 1265.

As evidenced by the parties' disagreement, however, it is unclear whether a county auditor must forward an *untimely* Form RRS–1 to the township assessor. Dalton maintains that a county auditor must forward every Form RRS–1 to the township assessor, regardless of whether the form was filed on time. The State Board, however, maintains that a county auditor is not required to forward an untimely Form RRS–1 to the township assessor for his "verification," and may deny it herself. The State Board asserts that the timely filing of a Form RRS–1 is a condition precedent to receiving the RRS deduction; consequently, when a Form RRS–1 is untimely, there is nothing for the township assessor to verify because the de-

duction is not allowed. Accordingly, the State Board explains that it would be a waste of time or an act of futility for the county auditor to forward an untimely Form RRS–1 to the township assessor for his "verification," and the law does not require the doing of a useless thing.

When a statute is reasonably susceptible to more than one interpretation, it is the role of a court to ascertain and give effect to the intent of the legislature. *Knauf Fiber Glass,* 629 N.E.2d at 961. To ascertain the intent of the legislature, courts examine the specific language that is to be construed. *Id.* Courts also examine the statute as a whole, for each section must be considered with reference to all other sections. *See State v. Adams* (1992), Ind.App., 583 N.E.2d 799, 800. On examination of the specific language of I.C. 6–1.1–12–35(a) and I.C. 6–1.1–12–35 as a whole, the court concludes that county auditors must forward every Form RRS–1 to the proper township assessor, regardless of whether the form was filed in a timely or untimely manner.

A. I.C. 6–1.1–12–35(a)

■ I.C. 6–1.1–12–35(a) provides that "[o]n verification of the statement by the assessor of the township ... the county auditor shall allow the deduction." This language leaves no doubt that legislature specifically delegated authority to verify the statement (the Form RRS–1) to township assessors, not county auditors. The legislature, however, did not specify exactly what "verification of the statement" involves.

The parties assert that "verification" is limited to a narrow range of activities. Dalton argues that "verification" is limited to determining whether the property claimed in the statement is the same property that was certified by IDEM. *Transcript of Hearing* at 12. The State Board argues that "verification" is limited to checking whether the property claimed in the statement is actually in the taxing district because "[y]ou can't get a deduction if the property is not in that

7. I.C. 6–1.1–12–35(d) provides that for personal property claimed to be eligible for the RRS deduction, "the statement [the Form RRS–1] ...

must be filed between March 1 and May 15 of the assessment year."

taxing district." *Transcript of Hearing* at 15.

In interpreting statutes, words and phrases are to be given their plain, ordinary, and usual meaning. *Knauf,* 629 N.E.2d at 961. The word "verification" is defined as the act or process of checking or testing the accuracy or exactness of a thing. *Webster's Third New International Dictionary* (1981) 2543. Accordingly, in verifying a Form RRS–1, a township assessor has authority to make any determination that is relevant to checking or testing the accuracy or exactness of the Form RRS–1, except, of course, a determination that is properly committed to IDEM. *See Auburn Foundry,* 628 N.E.2d at 1265–66 (the State Board does not have authority to make determinations properly committed to IDEM). Consequently, the phrase "verification of the statement" encompasses consideration of all factors that are relevant in determining whether to grant or deny a RRS deduction, which are not committed to IDEM, including: 1) whether the Form RRS–1 was properly filled out, contained the required information, and was timely filed; 2) whether the property claimed in the Form RRS–1 is the same property that was certified by IDEM; 3) whether the property claimed in the Form RRS–1 is actually in the taxing district; and 4) where appropriate, determining the assessed value of the property.[8] Nothing is reserved for the county auditor's consideration. The county auditor's role in purely ministerial. The county auditor receives the Form RRS–1, forwards it to the township assessor, and carries out the township assessor's instructions after the township assessor has determined whether to allow the deduction. The county auditor has no other authority or discretion.

### B. I.C. 6–1.1–12–35

In examining I.C. 6–1.1–12–35 as a whole, it is instructive to consider the relationship between I.C. 6–1.1–12–35(a) and I.C. 6–1.1–12–35(c). As noted earlier, I.C. 6–1.1–12–35(c) provides:

> A denial of a [RRS] deduction ... may be appealed as provided in IC 6–1.1–15. *The appeal is limited to a review of a determination made by the township assessor, county board of review, or state board of tax commissioners.*

(Emphasis added). Consequently, if a *county auditor* denies a Form RRS–1, a taxpayer has no appeal rights under I.C. 6–1.1–15. I.C. 6–1.1–12–35(c).[9] Extraction of a tax, however, constitutes a deprivation of property, and states must provide procedural safeguards against the unlawful extraction of a tax in order to satisfy the commands of due process. *McKesson Corp. v. Div. of Alcoholic Beverages and Tobacco* (1990), 496 U.S. 18, 36, 110 S.Ct. 2238, 2250, 110 L.Ed.2d 17, 35–36. Due process requires that a taxpayer be given the opportunity for a hearing before she is deprived of a property interest. *Id.* at 37, 110 S.Ct. at 2250, 110 L.Ed.2d at 36.

If, as the State Board asserts, I.C. 6–1.1–12–35(a) permits a county auditor to deny an untimely Form RRS–1 and I.C. 6–1.1–12–35(c) precludes an appeal of the county auditor's action, a taxpayer has no opportunity for a hearing before being deprived of her property interest, and the taxpayer is denied due process. If, however, I.C. 6–1.1–12–35(a) requires a county auditor to forward an untimely Form RRS–1 to the township assessor for verification, as Dalton maintains, any action taken by the township assessor is fully appealable under I.C. 6–1.1–15, and the taxpayer is not denied due process. The court is thus faced with two possible constructions of I.C. 6–1.1–12–35, one of which denies a taxpayer due process.

When a statute is susceptible to more than one interpretation, a court may consider the consequences of each interpretation. *Grisell v. Consolidated City of Indianapolis* (1981), Ind.App. 425 N.E.2d 247, 252. If a particular interpretation leads to an absurd result or

---

8. This court previously recognized that township assessors have authority to verify the assessed value of property claimed to be eligible to receive the RRS deduction. *Id.,* n. 5.

9. That is, a taxpayer has no right to bring an appeal directly from a final determination made by a county auditor. Of course, a taxpayer may indirectly appeal the county auditor's final determination by filing a Form 133 and alleging that there was an "error of omission" on the part of the township assessor—just as Dalton has done in this case.

a result that the legislature, as a reasonable body, could not have intended, the court will reject that interpretation. *Raider v. Pea* (1993), Ind.App., 613 N.E.2d 870, 873. Further, an "[u]nconstitutional intention will not be attributed to the legislature if reasonably avoidable." *See Price v. State* (1993), Ind., 622 N.E.2d 954, 963. Thus, if a particular statute is susceptible to an interpretation that is consistent with constitutional principles, the court will choose that interpretation over an interpretation that is inconsistent with constitutional principles. *See id.* Accordingly, this court holds that county auditors have no authority to deny an untimely filed Form RRS–1. Instead, they must forward every Form RRS–1 to the proper township assessor for verification.

### III

■ Having determined that a county auditor has no authority to deny an untimely Form RRS–1 and must forward every Form RRS–1 to the proper township assessor, court must now determine the extent of relief to which Dalton is entitled.

Dalton maintains that it is entitled to the RRS deduction as a matter of law. It argues that *State Board of Tax Commissioners v. New Energy Company,* (1992), Ind.App., 585 N.E.2d 38, establishes that a township assessor is required to consider an untimely filed Form RRS–1. Dalton further argues that *Auburn Foundry* establishes that assessing officials have no discretion with respect to the RRS deduction. Accordingly, Dalton reasons that because the township assessor must consider its untimely filed Form RRS–1 and has no discretion with respect to the RRS deduction, the township assessor must grant Dalton the RRS deduction. Dalton, however, misreads the law.

Neither I.C. 6–1.1–12–35, nor any other statute, prohibits a township assessor from considering an untimely application for a RRS deduction. *Cf. New Energy,* 585 N.E.2d at 40 (nothing in the law precludes the State Board from considering an untimely filed application for a deduction from the assessed valuation for new manufacturing equipment in an economic revitalization area). Consequently, township assessors

have the authority to consider an untimely filed Form RRS–1. *Cf. id.* (since nothing in the law precluded the State Board from considering an untimely filed application for a deduction from the assessed valuation for new manufacturing equipment in an economic revitalization area, the State Board had authority to consider it). Having the authority to do a thing, however, is not the same as being required to do it. Thus, while nothing in the law prevents a township assessor from considering an untimely filed Form RRS–1, nothing in the law requires a township assessor to consider an untimely filed Form RRS–1, either.

Moreover, *Auburn Foundry* did not hold that assessing officials have no discretion whatsoever with respect to the RRS deduction. *Auburn Foundry* held that assessing officials have no discretion to redetermine decisions properly committed to IDEM. *Auburn Foundry,* 628 N.E.2d at 1266. It is IDEM's job to determine whether a resource recovery system exists and, if so, what property is included in it. *Id.* Accordingly, once IDEM determines that a resource recovery system exists and certifies certain property as within the resource recovery system, assessing officials have no discretion to redetermine whether a resource recovery system exists or whether it includes less property than that certified by IDEM. *Id.* *Auburn Foundry* in no way, however, limits township assessors from carrying out the duties and functions that are properly committed to them.

If a township assessor had no discretion to deny an untimely filed Form RRS–1, as Dalton argues, the statutory filing deadlines prescribed in I.C. 6–1.1–12–35(a) and (d) would be meaningless. All statutory language, however, is deemed to have been used by the legislature intentionally. *Baker v. State* (1985), Ind.App., 483 N.E.2d 772, 774. Accordingly, "when construing a statute, the court should interpret the statute to fully affect all of the provisions in the statute to avoid an interpretation that would render any part meaningless." *Faris Mailing, Inc. v. Indiana Dep't of State Revenue* (1990), Ind.Tax, 557 N.E.2d 713, 716. This court, therefore, declines to interpret I.C. 6–1.1–12–

35(a) and (d) in a manner that would render the statutory filing deadlines meaningless. Accordingly, the court holds that a township assessor has discretion to deny an untimely filed Form RRS-1.

While Dalton is not entitled to the RRS deduction as a matter of law, Dalton is entitled to have its Form RRS-1 for the March 1, 1993, assessment forwarded to the Wayne Township Assessor. How Dalton's untimely Form RRS-1 is then handled is within the Wayne Township Assessor's discretion.

### CONCLUSION

For the reasons stated above, the court grants Dalton's motion for summary judg-ment with respect to Issues I and II, and denies Dalton's motion for summary judg-ment with respect to Issue III. The case is remanded to the State Board. Upon re-mand, the State Board is ordered to instruct the Auditor to forward Dalton's Form RRS-1 for the March 1, 1993, assessment to the Wayne Township Assessor.