**GARY COMMUNITY SCHOOL CORPORATION,**
Petitioner,

v.

**INDIANA DEPARTMENT OF LOCAL GOVERNMENT FINANCE,**
Respondent.

No. 45T10–1104–TA–30.

Tax Court of Indiana.

Aug. 29, 2014.

James D. Shanahan, Shanahan & Shanahan LLP, Chicago, IL, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, John D. Snethen, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

WENTWORTH, J.

This case concerns the Indiana Department of Local Government Finance's (DLGF) reduction of the Gary Community School Corporation's exempt debt service fund levy for the 2011 budget year. The Court reverses.

## BACKGROUND

The Gary Community School Corporation is a public school corporation located in Lake County, Indiana. Approximately eleven years ago, the School Corporation petitioned the DLGF to approve its lease rental agreement (Lease) with the Gary Community School Building Corporation. The Lease provided that the Building Corporation would build two new elementary schools and then lease them to the School Corporation for a 25–year period at an annual rental of $2,800,000. On May 1, 2003, the DLGF approved the Lease in Order No. 03–025 (the 2003 Order).

To pay its obligations under the Lease, the School Corporation issued a bond and secured two common school loans (collectively, "the rental obligations"). In the ensuing years, the School Corporation used surplus monies from its general fund to pay its rental obligations, but the surplus dwindled more rapidly than anticipated. Accordingly, on October 12, 2010, the School Corporation adopted its 2011 Budget that included an exempt debt service fund levy to pay, among other things, its continuing rental obligations. The School Corporation subsequently submitted the budget to the DLGF for review.

On March 23, 2011, the DLGF reduced the School Corporation's exempt debt service fund levy by removing all the amounts related to the payment of the rental obligations. The DLGF explained that it had done so because there was no indication that the School Corporation had used an exempt debt service fund levy to pay its rental obligations in the past. The DLGF also stated that "[t]he magnitude of the gen[era]l fund budget ($104M) and reliance on a past DLGF order and the schools['] avoidance of taxpayer remonstrance opportunities all require a high threshold of proof that there are insufficient funds in the gen[era]l fund to pay the debt." (Cert. Admin. R. at 390.)

On March 24, 2011, the School Corporation filed a written protest with the DLGF. The DLGF denied the protest without explanation on March 31, 2011.

On April 19, 2011, the School Corporation initiated this original tax appeal. The Court heard oral argument on October 17, 2011. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ The party seeking to overturn a DLGF final determination bears the burden of demonstrating that it is invalid. *See Brown v. Dep't of Local Gov't Fin.*, 989 N.E.2d 386, 388 (Ind. Tax Ct.2013). Accordingly, the School Corporation must show to the Court that the DLGF's final determination is contrary to law, arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. *See id.*

## ANALYSIS

On appeal, the School Corporation asserts that the DLGF exceeded its authority in reducing its exempt debt service fund levy for the 2011 budget year because the statutory framework for reviewing such levies did not authorize the DLGF to consider other sources of funding (*e.g.,* its general fund). (*See* Pet'r Br. at 7–16; Oral Arg. Tr. at 21–24, 30–37.) The DLGF, on the other hand, contends that it properly considered other funding sources given 1) the lack of a statutory prohibition, 2) the terms of the 2003 Order, and 3) the School Corporation's improper avoidance of the taxpayer remonstrance process. (*See* Resp't Br. at 7–13.) In addition, the DLGF contends that the Court must defer to its factual finding that the School Corporation's general fund has sufficient money available to pay its rental obligations because that finding is supported by substantial evidence. (*See* Resp't Br. at 10.)

### Statutory Authority

On appeal, the School Corporation asks the Court to reverse the DLGF's reduction of its exempt debt service fund levy because the statutory framework for reviewing these levies limits the DLGF's authority to considering whether that fund alone is sufficient to pay its rental obligations. (*See* Pet'r Br. at 7–13; Pet'r Reply Br. at 9–11.) The DLGF, on the other hand, maintains that it properly considered amounts potentially available in the School Corporation's general fund in reviewing its exempt debt service fund levy because no statute prohibits it from doing so. (*See* Resp't Br. at 7, 10; Oral Arg. Tr. at 46.) The DLGF explains that given its expertise and the need for overall fiscal responsibility in school funding, the General Assembly could have intended that it consider other funding sources in its budget reviews. (*See* Resp't Br. at 7–9; Oral Arg. Tr. at 43.)

The laws governing the DLGF's responsibilities with respect to school corporation funding are contained in both the property tax provisions of Title 6 and the school funding provisions of Title 20 of the Indiana Code. *See generally* Ind.Code § 6–1.1–17–1 *et seq.* (2014) (regarding the fixing and reviewing of budgets, tax rates, and tax levies); Ind.Code § 20–46–7–1 *et seq.* (2014) (regarding debt service levies);[1] Ind.Code § 20–48–1–1 *et seq.* (2014) (regarding borrowing and bonds). Together, this statutory framework establishes the parameters of the DLGF's annual review of a school corporation's budget.

For instance, Indiana's property tax provisions authorize the DLGF to change a school corporation's budget when 1) it reviews a budget under Indiana Code §§ 6–1.1–17–8 or 6–1.1–17–10; 2) a political subdivision's tax rate constitutes the aggregate tax rate; 3) circumstances require a public hearing; or 4) notice was incorrectly published. *See* Ind.Code § 6–1.1–17–16(a)–(d) (2010) (amended 2012). Moreover, Indiana's school funding provisions provide that if a school corporation's "advertised levy is insufficient to produce revenue to meet all obligations[2] for any

---

1. A debt service fund levy differs from an exempt debt service fund levy because it is subject to the circuit breaker credit, while an exempt debt service fund levy is not. *See* Ind.Code § 6–1.1–20.6–7.5(c) (2010) (amended 2013); Ind.Code 6–1.1–20.6–0.3 (2011); Ind.Code § 6–1.1–20.6–9.8 (2010) (amended 2012) (indicating that in certain instances the circuit breaker credit does not apply when Lake County's local government units and school corporations seek to impose an exempt debt service fund levy); Ind.Code §§ 20–46–7–1 to –4 (2010) (regarding the establishment of debt service funds). Nonetheless, Indiana Code § 20–46–7–1 *et seq.* governs the establishment of both of these levies.

2. An obligation "refers to any obligation that is permitted or required by law to be paid

calendar year, the [DLGF] may establish a levy greater than advertised if necessary to meet the school corporation's obligations." IND.CODE § 20–46–7–5 (2010) (footnote added). Indiana Code § 20–48–1–11 similarly provides that

> [b]efore the end of each calendar year, the [DLGF] shall review the bond and lease rental levies, or any levies that replace bond and lease rental levies, of each school corporation that are payable in the next succeeding year and the appropriations from the levies from which the school corporation is to pay the amount, if any, of the school corporation's debt service obligations.[3] If the levies and appropriations of the school corporation are not sufficient to pay the debt service obligations, the [DLGF] shall establish for each school corporation:
>
> (1) bond or lease rental levies, or any levies that replace the bond and lease rental levies; and
>
> (2) appropriations;
>
> that are sufficient to pay the debt service obligations.

IND.CODE § 20–48–1–11(b) (2010) (footnote added); *see also* IND.CODE § 20–48–1–6 (2010) (stating the DLGF must determine whether a school corporation's bond and lease rental levies are sufficient to pay these debts).

The DLGF is correct that no express statutory language prohibits it from determining the sufficiency of the School Corporation's requested levy by considering amounts that may be available from its other funds. The absence of this prohibition, however, does not imply that the DLGF has the authority to do so. Indeed,

if the General Assembly had intended for the DLGF to consider other funding sources, it could have affirmatively stated that the DLGF could, but it did not. *See Haas Pub. Co. v. Indiana Dep't of State Revenue*, 835 N.E.2d 235, 238 (Ind. Tax Ct.2005) (explaining that "what a statute does *not* say is just as important as what it does say" (citation omitted)), *review denied; Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue*, 569 N.E.2d 765, 769 (Ind. Tax Ct.1991) (providing that statutory language is deemed intentionally chosen by the legislature and the Court will not read in any purportedly omitted language), *aff'd*, 587 N.E.2d 1311 (Ind.1992). Accordingly, the Court cannot construe the lack of a statutory prohibition as authorizing the DLGF to consider other funding sources without express language to that effect.

In addition, the statutory framework for school corporation funding is organized into distinct funds that serve different purposes, have different requirements, and provide different benefits. *See, e.g.,* IND. CODE § 20–46–4–1 *et seq.* (2014) (regarding school transportation levies); IND.CODE § 20–46–5–1 *et seq.* (2014) (regarding school bus replacement levies); I.C. § 20–46–7–4 (regarding debt service levies); IND.CODE §§ 20–46–7–6, –7(2) (2010) (regarding common school loan levies); I.C. § 20–48–1–11 (regarding bond and lease rental levies or their equivalents); IND. CODE § 20–49–4–21 (2010) (regarding common school loan levies). Thus, to allow the DLGF to consider other funding sources when determining the sufficiency of an exempt debt service fund levy would be inconsistent with the General Assembly's

---

from [a debt service] fund under IC 20–40–9 or another law." *See* I.C. §§ 20–46–7–1, –4.

**3.** A school corporation's "debt service obligations" "refer[] to the principal and interest

payable during a calendar year on a school corporation's general obligation bonds and lease rentals under IC 20–47–2 and IC 20–47–3." IND.CODE § 20–48–1–11(a) (2010).

trenchant segregation of the School Corporation's funds. *See Mynsberge v. Dep't of State Revenue*, 716 N.E.2d 629, 633 (Ind. Tax Ct.1999) (explaining that the Court endeavors to apply statutes in a manner that will not render other statutes meaningless, superfluous, or a nullity).

The DLGF is an administrative agency that has no common law or inherent powers, and thus, it cannot exercise power beyond that expressly or impliedly given by the General Assembly. *See* IND.CODE § 6–1.1–30–1.1 (2010); *Auburn Foundry, Inc. v. State Bd. of Tax Commr's*, 628 N.E.2d 1260, 1263 (Ind. Tax Ct.1994). In fact, any ambiguous grants of power generally must be resolved against the agency. *See Adkins v. City of Tell City*, 625 N.E.2d 1298, 1302 (Ind.Ct.App.1993). Consequently, the Court is not persuaded that the absence of a statutory prohibition provides the DLGF with the authority to consider amounts potentially available from the School Corporation's general fund in reviewing its exempt debt service fund levy for the 2011 budget year.

### The 2003 Order

■ Next, the School Corporation claims that the 2003 Order does not authorize the DLGF to consider other funding sources in reviewing its exempt debt service levy. (*See* Pet'r Reply Br. at 3–4; Oral Arg. Tr. at 24–30.) The DLGF argues, on the other hand, that the 2003 Order requires the School Corporation to pay its rental obligations from its general fund until the debt is fully satisfied. (*See* Resp't Br. at 7–10; Oral Arg. Tr. at 45–46.)

The DLGF approved the School Corporation's Lease in the 2003 Order, which provides as follows:

A petition was filed on behalf of [the School Corporation] for approval of a lease with the [Building Corporation] providing for the lease of a school building for a term of twenty-five (25) years at an annual lease rental of $2,800,000 commencing on the day the school buildings are completed and ready for occupancy or June 30, 2005, whichever is later. The lease includes an option to purchase such building. The School Corporation has determined that a levy outside the levy limitations of I.C. 6–1.1–19 will not be needed to pay debt service on the bonds. The [DLGF] has reviewed the petition pursuant to I.C. 6–1.1–19–4.2 and the School Corporation has complied with the appropriate provisions of I.C. 6–1.1–20 and I.C. 6–1.1–19. After careful consideration of all facts, the [DLGF] takes the following action:

APPROVE:

Execution of a lease with the [Building Corporation], providing for the lease of a school building for a term of twenty-five (25) years at an annual lease rental of $2,800,000 commencing on the day the school buildings are completed and ready for occupancy or June 30, 2005.

To obtain a debt service rate for 2003 pay 2004, the unit must comply with the provisions of IC 6–1.1–17–3. In addition, on or before December 31, 2003, the unit must execute the above issue and file with the [DLGF] a final amortization schedule.[4]

(Cert. Admin. R. at 51 (footnote added).) On its face, the 2003 Order indicates that the School Corporation determined that it did not need a property tax levy beyond that provided under Indiana Code § 6–1.1–

---

**4.** Although the 2003 Order refers to the leasing of a single school building in some instances and more than one building in others, the Lease indicates that the Building Corpora-

tion leased two elementary schools to the School Corporation. (*See* Cert. Admin. R. at 68.)

19 to pay its bond obligations, but it does not indicate that the School Corporation would never seek a property tax levy to pay its rental obligations.[5] (*See* Cert. Admin. R. at 51.) Also, nothing in the 2003 Order indicates that the DLGF conditioned its Lease approval on the School Corporation's exclusive use of its general fund to pay its rental obligations. (*See* Cert. Admin. R. at 51.) In fact, the 2003 Order demonstrates that the DLGF directed the School Corporation to comply with the provisions of Indiana Code § 6-1.1–17–3 if it needed to obtain a debt service rate. (*See* Cert. Admin. R. at 51.) Consequently, the plain language of the 2003 Order did not authorize the DLGF to consider other funding sources in reviewing the School Corporation's exempt debt service fund levy for the 2011 budget year. *See, e.g., Stump v. Indiana Dep't of State Revenue*, 777 N.E.2d 799, 802 (Ind. Tax Ct.2002) (indicating that the words and phrases used in administrative rules and regulations are to be given their plain, ordinary, and usual meanings).

### Taxpayer Remonstrance

■ The School Corporation further contends that the DLGF exceeded its authority by reducing its exempt debt service fund levy under the guise that it was preventing the School Corporation from unfairly avoiding the taxpayer remonstrance process. More specifically, the School Corporation explains that seeking DLGF approval of an exempt debt service fund levy does not provide for a taxpayer remonstrance process but does provide other opportunities for the public to be heard. (*See* Pet'r Br. at 13–16; Pet'r Reply Br. at 5–9.)

The DLGF counters, however, that it was necessary for it to reduce the School Corporation's requested levy to ensure that the taxpayer remonstrance process under Indiana Code §§ 6–1.1–20–3.1 or 6–1.1–20–3.2 was not unfairly avoided. (*See* Resp't Br. at 11–13.) In support, the DLGF cites *Huntington County Community School Corporation v. Indiana State Board of Tax Commissioners*, 757 N.E.2d 235, 236–38 (Ind. Tax Ct.2001) for the proposition that the School Corporation's participation in the taxpayer remonstrance process is prerequisite to the DLGF's approval of the School Corporation's exempt debt service fund levy. (*See* Resp't Br. at 11–12; Oral Arg. Tr. at 48–50.)

As an initial matter, *Huntington* is simply not applicable to these circumstances because the issues and governing statutes are different. Indeed, *Huntington* concerned the process of approving a lease rental agreement governed by Indiana Code §§ 6–1.1–20–3.1 and 6–1.1–20–3.2, while the issue here is the approval of an exempt debt service fund levy governed by Indiana Code §§ 6–1.1–17–16(j) and 20–48–1–11. *See Huntington Cnty. Cmty. Sch. Corp. v. Indiana State Bd. of Tax Comm'rs*, 757 N.E.2d 235, 236 (Ind. Tax Ct.2001). Moreover, unlike Indiana Code §§ 6–1.1–20–3.1 and 6–1.1–20–3.2, the plain language of Indiana Code §§ 6–1.1–17–16(j) and 20–48–1–11 that apply here does not include either a right to remonstrate or incorporate by reference any statute that does. *Compare* IND.CODE §§ 6–1.1–20–3.1, –3.2 (2010) (amended 2011) *with* I.C. § 6–1.1–17–16(j) *and* I.C. § 20–48–1–11.

---

5. In fact, the administrative record reveals that about a year after executing the Lease, the School Corporation stated in an amendment to the Lease that it would deposit a percentage of its rental payments with a trus-tee *unless it had "levied a tax in its debt service fund with which to pay the annual rentals[.]"* (*See* Cert. Admin. R. at 44–45 (emphasis added).)

Furthermore, as the School Corporation has explained, Indiana's property tax statutes provide taxpayers with opportunities other than remonstrance to object to a school corporation's request to establish an exempt debt service fund levy. *See, e.g.,* IND.CODE §§ 6–1.1–17–5(b), –13, –16(g)(2) (2014). In this case, the administrative record shows that the School Corporation adopted its 2011 proposed budget without taxpayer objection. (*Compare, e.g.,* I.C. § 6–1.1–17–5(b)–(c) (requiring a school corporation to adopt with its budget a finding if a taxpayer files an objection petition) *with* Cert. Admin. R. at 1–21 (indicating that the School Corporation's proposed budget was adopted without such a finding.)) Accordingly, the Court is not persuaded that the DLGF had the authority to reduce the School Corporation's exempt debt service fund levy to redress the School Corporation's avoidance of the taxpayer remonstrance process.

### Substantial Evidence

▮ Finally, the School Corporation claims that the DLGF's factual finding that its general fund was sufficient to pay its rental obligation is unsupported by substantial evidence. (*See* Pet'r Reply Br. at 12–14.) The DLGF, on the other hand, claims that the Court should defer to its factual finding. (*See* Resp't Br. at 6–10; Oral Arg. Tr. at 43–44.)

The administrative record in this case generally contains financial reports, completed budgetary forms, and other budget-related documentation. (*See generally* Cert. Admin. R; *see also* Pet'r Opp'n Resp't Mot. Strike App. to Pet'r Br. ("Pet'r Opp'n Br."), Ex. A.)[6] This evidence documents the basis for the School Corpo-

ration's position that although its 2011 general fund revenues would be $104 million, it could not continue to use monies from that fund to pay its rental obligations because doing so would likely create a deficit. (*See* Cert. Admin. R. at 116, 390–93, 401–02.) More specifically, the School Corporation explained that it had lost over 28% of its revenue since electing to pay the rental obligations from its general fund due to the unforeseeable enactment of legislation that both removed its ability to impose a property tax levy for school funding and changed the general fund funding formula applicable to all school corporations. (*See* Pet'r Opp'n Br., Ex. A at 1.) The School Corporation also explained that a mid-year state mandate had further reduced its general fund by nearly $5 million. (*See* Pet'r Opp'n Br., Ex. A at 1–2 (explaining that because the School Corporation was "obligated to pay [its] contracts for the remainder of th[e] school year, [it would] have to make additional reductions to absorb th[at] unanticipated loss in revenue").)

The DLGF found that the School Corporation's general fund was sufficient to cover its rental obligations based solely on the sheer magnitude of the revenue in that fund, but it failed to direct the Court to any evidence in the record that supports its finding or explain its reasons for discrediting the School Corporation's evidence. Instead, the DLGF has merely implied that the School Corporation should have made further cutbacks in its general fund, like other schools had done, to avoid raising property taxes. (*See* Resp't Br. at 10.) Thus, even if the DLGF's consideration of other funding sources had been

---

6. *See Gary Cmty. Sch. Corp. v. Indiana Dep't of Local Gov't Fin.,* No. 45T10–1104–TA–30, slip op. at 3–4, 15 N.E.3d 1141, 2014 WL 4258826 (Ind. Tax Ct. Aug. 29, 2014) (finding, among other things, that the two-page letter

(*i.e.,* the March 24th Letter) attached to the School Corporation's brief in opposition to the DLGF's motion to strike was part of the administrative record).

proper, which it was not, the Court would not defer to its factual finding that the School Corporation had sufficient funds in its general fund to cover its rental obligations because it is not supported by substantial evidence. *See Perry v. Indiana Dep't of Local Gov't Fin.*, 892 N.E.2d 1281, 1282–83 (Ind. Tax Ct.2008) (explaining that the Court need only defer to the DLGF's factual findings when they are supported by substantial evidence).

## CONCLUSION

In this case, the DLGF's reduction of the School Corporation's exempt debt service fund levy is beyond the scope of its authority and unsupported by substantial evidence. Accordingly, the Court REVERSES the DLGF's final determination and REMANDS the matter for action consistent with this opinion.